## APPEAL OF CHAS. F. VAN NORT.
## [J. J. ALBRIGHT v. C. F. VAN NORT.]

### FROM THE DECREE OF THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

Argued February 22, 1888—Decided October 1, 1888.

1. For an erroneous assessment of taxes for state purposes under the act of June 30, 1885, P. L. 193, the remedy afforded to the tax payer on an appeal to the commissioners, is an ample remedy, and may be regarded as exclusive, except perhaps in extraordinary cases.
2. When a tax payer, refusing to make a return of property taxable under said act, by his silence acquiesced in that made by the assessor, and, having had knowledge of an erroneous assessment, when the day of appeals has passed still refuses on an application for relief to make the corrected return authorized by the act, he is without equity to entitle him to have the collection of the tax restrained by an injunction.
3. Where the general power to assess for taxes exists, the proper remedy for illegal taxation is by an appeal to those to whom the appeal is required to be taken; and if none be given the courts cannot revise the judgment of the tax officers : Hughes v. Kline, 30 Pa. 227 ; Clinton Sch. D.'s App., 56 Pa. 315, followed.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 23 January Term 1888, Sup. Ct.; court below, No. 5 October Term 1887, C. P. in Equity.

On June 28, 1887, Joseph J. Albright, a citizen residing in the Ninth ward of Scranton, filed a bill in equity against

Charles F. Van Nort, collector of taxes in said ward, averring in substance:

That the complainant had made no return to the assessor of said ward of property to be assessed to him for state purposes for the year 1886, and thereupon it became and was the duty of said assessor to make a return for the complainant, estimating the amount from the best information at his command, according to the provisions of § 9, act of June 30, 1885, P. L. 193, which act was made a part of the bill.

That the county commissioners furnished to said assessor a certified list of mortgages standing unsatisfied upon the records of Lackawanna and Luzerne counties, wherein the complainant was mortgagee, and from which the assessor was to derive the best information of their existence.

That upon said list, there appeared two mortgages, one by the Union Coal Co., for $259,919.41, dated September 18, 1867, and another by the Balt. Coal & Union R. Co., for $360,449.57, dated July 22, 1868, both to Joseph J. Albright, trustee, and given to secure certain bonds in which the complainant had no personal interest, and which said mortgages had in fact been paid many years before and had been satisfied of record; that the said assessor unjustly and illegally assessed the said two mortgages for taxation against the complainant, and thereupon the said commissioners upon such illegal return, assessed a tax of 3 mills for state purposes against the complainant on the full amount of said two mortgages, the levy amounting to $1,861.10.

That the return of said assessment made by the assessor to the complainant was made in such a way that he was misled by it, and he had no knowledge that he had been assessed with the amount of said two mortgages until after the day of appeal in his ward had passed; that, as soon as he was informed of the fact that such assessment had been made, he immediately applied to the commissioners to have said illegal assessment corrected and stricken off; yet the said commissioners, though having in their hands the evidence of the illegality of such assessment, refused to grant relief and placed said tax so illegally assessed in the hands of the defendant for collection, and that said defendant was about to seize and sell the personal property of the complainant to obtain payment of said tax. The

prayers were for a preliminary injunction till final hearing, a permanent injunction thereafter, and for general relief. The preliminary injunction prayed for was awarded.

From the affidavits read on the hearing of the motion to continue the preliminary injunction, on July 2, 1887, it appeared that said mortgages were of record as stated in the bill; that the bonds, to secure which the mortgages were given, had for many years before been fully paid, but through neglect the mortgages had remained unsatisfied until after the said assessment; that the assessor had handed to the complainant a slip notifying him of his assessment, but the figures thereon were so pointed off as to indicate an assessment of $642.08, instead of one of $642,088, about the amount of the mortgages; that not understanding the slip, he did not attend the commissioners' court of appeals, and had no knowledge of the illegal assessment until the tax of 3 mills had been assessed, when he applied to the commissioners for relief which was refused. It also appeared from an affidavit made by one of the county commissioners, that the complainant had never made nor offered to make the return required by law of property taxable for state purposes for the year 1886; that after the notice of the assessment to the complainant, he had several times appeared before the county commissioners and applied to have the assessment stricken off, when he was requested to make the return provided for by the law, but this he had refused or declined to do.

On August 31, 1887, the court, ARCHBALD, J., filed the following opinion and decree:

The plaintiff, who is a taxable of the Ninth ward of the city of Scranton, failed to make a return of his personal property as required by § 7, act June 30, 1885, P. L. 196, and the assessor thereupon made one for him, estimating his property as follows: Household furniture, $2,500; money due on mortgages, $642,088; money due on judgments, $9,579. Total, $654,127. It is undisputed that the amount as returned as due on mortgages, was obtained from the records of the county commissioners, and includes two trust mortgages, aggregating $620,000, in which the plaintiff had no personal property or interest, but merely stood as trustee for bondholders. At the

time of the return, the bonds had been fully paid and the mortgages have since been satisfied of record. Does this showing to such extent invalidate the assessment?

The general rule in cases of this kind undoubtedly is that where the taxable has neglected or failed to make a return as required by the statute, if the assessor in the due exercise of his judgment makes an estimate of his property for him, this cannot be assailed by the taxable by showing that he has not the amount of property so returned. This would be merely a matter of excessive valuation, which the courts do not undertake to adjust: Hughes v. Kline, 30 Pa. 231. But the important part of this rule is, that there must have been a due exercise by the assessor of the discretion committed to him, and this suggests the limits to which the rule itself may alone be properly carried. Thus, if the assessor injudiciously discriminates against a taxable or makes a purposely oppressive assessment, this is such an abuse of his discretion as avoids the assessment: Cooley, Taxation, 157; Merrill v. Humphry, 24 Mich. 170; Lefferts v. Calumet, 21 Wis. 688; Milwaukee Iron Co. v. Hubbard, 29 Wis. 51. He does not in such case bring his judgment to bear upon the question submitted to him, but exerts it arbitrarily and capriciously, defeating the purpose of the laws. Similarly, it has been held that the assessment will be avoided if made in disregard of the actual and well known facts, as where the lands of one person are assessed to another who has no connection with their title or occupancy: Whiting v. Thomas, 23 N. Y. 281; Buffalo, etc., R. Co. v. Erie Co., 48 N. Y. 98; State v. Millston, 20 Wis. 228; People v. Castro, 39 Cal. 65. With regard to this it is said in People v. Castro, supra: "It was distinctly proved on the trial that the defendant was not the owner of about fifteen hundred acres of the land assessed to him, and that this land was in the actual occupation of other persons holding title under recorded deeds. This fact of itself established a legal fraud which vitiated the entire assessment. No citizen would be safe from illegal and onerous exaction, if assessors are to be permitted thus flagrantly to violate the laws by assessing large and valuable estates, not to the owners in the actual and visible possession under recorded titles, but to others, who claim no interest in the property, and are not in possession."

The present case in my opinion, falls within the decisions last cited, and the exception to the rule which they sustain. The assessor here, has not only not estimated the amount of the plaintiff's taxable property from the best information at his command, as directed to do by the statute, but he has actually disregarded his information and drawn into and made part of his estimate what the record of the commissioners' office showed did not belong to the plaintiff but to others. This did not constitute a due exercise of the discretion with which he was invested. It was either a sheer abuse of his authority, or if made in mistake, was such a mistake as amounts to a legal fraud, and to such extent avoids the return. If this assessment is invalid, the plaintiff has a right to have it so declared, and the collection of the tax restrained regardless of the existence of the remedy by appeal. This is not simply an irregularity, nor matter of overvaluation, to be so corrected. It is an illegality which vitiates the whole proceedings: Harper's Appeal, 109 Pa. 9. The mere circumstance that it might be corrected upon appeal to the county commissioners will not legalize it. Moreover, the right of appeal is not absolute. The plaintiff must excuse his default to the satisfaction of the commissioners. Suppose he should not be able to do this, must he still be subject to the return as made? The fact is, that the failure of the taxable to make a return, does not authorize the assessor to make any return he pleases for him. The discretion of the assessor must be duly exercised. If it be shown that it has not been, the return is not legal, and the taxable is not thereby subjected to the provision of the statute. He stands without it, and until brought within its pale by a proper return, is not bound to pursue the remedies which it provides: Harper's Appeal, supra.

In reaching these conclusions, I am not unaware of the decisions in Osborne v. Danvers, 6 Pick. 98, and Lincoln v. Worcester, 8 Cush. 65, but I cannot accept them as ruling this case. The statute under which the former was decided provided that whenever any person shall be aggrieved by being overrated in the assessment of any tax, he may apply to the assessors to make a reasonable abatement, and if they refuse so to do, complaint was to be made in the nature of an appeal to the court. The tax in that case was resisted on the ground

Arguments.

that the property for which the plaintiff was assessed was not liable to the tax. The court held that this was mere matter of overvaluation, and that the remedy provided by the statute must be pursued. The provisions of this statute, it is to be noted, are considerably different from those of that which we are considering, and the decision cannot therefore be safely taken as a guide. So far also as it denies the right to show in avoidance of a tax, that the property assessed is not liable, it runs counter to the decisions of our own courts. In either case I must decline to follow it as an authority ruling the case in hand. The decision in Lincoln v. Worcester is based upon that in Osborne v. Danvers, and does not add particularly to it. In conclusion, it may be remarked that the act of 1885 has not without difficulty been sustained by the Supreme Court: Fox's Appeal, 112 Pa. 337. It is not therefore to be oppressively administered or construed. A construction, which fairly regards the right of the individual tax payer, and does not unduly interfere with the collection of the revenues of the state thereby provided for, has at once the sanction of common judgment, justice and equity.

I think the plaintiff has presented a case which calls for the restraining power of the court, and the rule to continue the preliminary injunction is therefore made absolute.

Thereupon the defendant took this appeal, and assigned as error :

1. The order granting the preliminary or special injunction.

2. The order continuing the injunction granted.

*Mr. Louis A. Watres*, for the appellant:

1. By the revenue act of 1885 it is made the duty of each taxable person to make the return prescribed: §§ 6, 7, act of June 30, 1885, P. L. 193 ; Fox's Appeal, 112 Pa. 337. An appeal, which is a simple and adequate remedy for all grievances concerning the assessment of the tax, is also provided, which appeal so provided is the proper remedy : Clinton Sch. D.'s App., 56 Pa. 315 ; Gorrell v. Murphy, 1 Leg. G. R. 495 ; Wharton v. Birmingham Bor., 37 Pa. 371 ; Stewart v. Maple, 70 Pa. 221 ; Cunningham v. Mitchell, 67 Pa. 78. And the correction of errors in assessments that may be made on appeal to the

commissioners, or by any jurisdiction superadded for that purpose, is final and conclusive, and not subject to be reviewed by bill of equity: Hughes v. Kline, 30 Pa. 227, followed by Stewart v. Maple, 70 Pa. 221; Gorrell v. Murphy, 1 Leg. G. R. 495; Christ v. Morris, 11 Phila. 357.

2. The right of a party to be heard in abatement may be made to depend upon his furnishing a return of his property for taxation, as in Massachusetts, Maine, Vermont, and many other states: Lott v. Hubbard, 44 Ala. 593; Winnisimett Co. v. Chelsea, 6 Cush. 477; Porter v. Commissioners, 5 Gray 365; Lincoln v. Worcester, 8 Cush. 55; Otis Co. v. Ware, 8 Gray 509; State v. Apgar, 31 N. J. L. 358; Young v. Parker, 33 N. J. L. 192; Charleston v. Middlesex Co., 101 Mass. 87; Freedom v. Commissioners, 66 Me. 176; Lombard v. Commissioners, 53 Me. 505; Harwood v. North Brookfield, 130 Mass. 561; Little v. Greenleaf, 7 Mass. 236; Davis v. Macy, 124 Mass. 193; Bourne v. Boston, 2 Gray 494; Howe v. Boston, 7 Cush. 273; Osbourne v. Danvers, 6 Pick. 98, Preston v. Boston, 12 Pick. 7; Cooley on Taxation, 2d ed., 358, 750; 1 Desty on Taxation, § 116.

3. Thus it will be seen, from the cases cited, that where a person is overtaxed, whether from overvaluation, or by including estates for which he is not liable, abatement is the sole remedy, and equity will not restrain the collection of the tax when there is a full and adequate remedy at law, even though fraud be alleged in the bill: Hagenbuch v. Howard, 34 Mich. 1; Mears v. Howarth, 34 Mich. 19; Peoria v. Kidder, 26 Ill. 351; Greene v. Mumford, 5 R. I. 472; Dodd v. Hartford, 25 Conn. 232; Brewer v. Springfield, 97 Mass. 152; Brooklyn v. Meresole, 26 Wend. 132; State Railroad Tax Cases, 92 U. S. 576; Arnold v. Middleton, 39 Conn. 401. The cases cited by the court below, all arose upon questions of fraudulent and erroneous assessments of land, when there was no question of the duty of a tax payer to disclose the amount of his estate liable to taxation. In the case at bar, the tax payer was not only in default, but in open and bold defiance of the law.

*Mr. W. H. Jessup* (with him *Mr. W. H. Jessup, Jr.*, and *Mr. H. E. Hand*), for the appellee:

1. By the act of 1885, § 9, upon the refusal or failure of a

taxable to make the required return, the duty is shifted upon the assessor, and it is required that his estimate shall be made "from the best information at his command." The "best information," placed in the assessor's hands by the commissioners, was the record of the two mortgages, which showed that they stood in the name of J. J. Albright, trustee. The assessment, made under such circumstances, was a flagrant abuse of discretion. There was no exercise of discretion at all, but a wilful and fraudulent return of property as belonging to the complainant, in which the records in the hands of the assessor showed he had no personal interest. An arbitrary and capricious exercise of official authority, being without law and done to defeat the purpose of the law, must like all other wrongs be subject to the law's correction: Cooley on Taxation, 157–8; Merrill v. Humphrey, 24 Mich. 170; Lefferts v. Calumet, 21 Wis. 697; Milwaukee Iron Co. v. Hubbard, 29 Wis. 51; Albany v. Railroad Co., 16 Barb. 249.

2. The equitable powers of the court will be exercised in all cases of fraud, accident and mistake, and the default of the complainant in not making his return is no bar to equitable relief. The only penalty imposed by the statute, is the penalty of 50 per cent for the default: Fox's App., 112 Pa. 357. " When the tax is illegal, one is not obliged to apply for an abatement, unless the statute makes that the sole remedy, but he may contest the tax when an attempt is made to collect it:" Cooley on Taxation, 528; so in New Jersey: State v. Metz, 32 N. J. L. 199; State v. Haight, 35 N. J. L. 279; State v. Bentley, 23 N. J. L. 532; Young v. Parker, 33 N. J. L. 192; State v. Quaife, 23 N. J. L. 89; State v. Kingsland, 23 N. J. L. 85. In this state, it has always been held that "when the tax is levied without authority of law, the right to enjoin against its collection is undoubted:" Conners' App., 103 Pa. 356; St. Clair Sch. B's App., 74 Pa. 252.

3. When the right of the plaintiff is doubtful, or when he has an adequate remedy at law, injunction will not be granted; but when the right is clear, and the danger probable that the right will be defeated without the special interposition of the court, it will in general be granted: Miller v. Gorman, 38 Pa. 309; Shirk v. Bucher, 53 Pa. 94; Petersburg v. Noss, 52 Pa. 448; O'Donnell v. Strong, 1 W. N. 339; Harper's App., 109

Pa. 9. We have thus shown a grossly fraudulent and illegal assessment of which the complainant had no notice until the day of appeal had passed, and the courts of this state have the undoubted power to grant the relief.

4. Of the citations made by the appellant's counsel, those from the courts of Massachusetts are predicated upon their statute which makes the estimate of the assessor conclusive : Fox's App., 112 Pa. 359. So, the ruling in State v. Apgar, 31 N. J. L. 358, was based upon the statute of 1862, which provided that a party refusing to make a sworn return to the assessor should be subjected to a fine and be deprived of any right to appeal from any tax for which he might be assessed. The ruling has been modified by State v. Metz, State v. Haight and State v. Bentley, supra. Hughes v. Kline, 30 Pa. 227 ; Cunningham v. Mitchell, 67 Pa. 78 ; Wharton v. Birmingham Boro, 37 Pa. 371 ; Stewart v. Maple, 70 Pa. 221, and Clinton Sch. D.'s App., 56 Pa. 315, are also to be distinguished.

OPINION, MR. JUSTICE STERRETT :

The complainant, Joseph J. Albright having refused to make the return required by the supplement of 1885, it thereupon became the duty of the assessor to make a return for him, "estimating the amount from the best information at his command." As contemplated by the act, the assessor had been furnished with a certified list of mortgages, etc., in favor of complainant, remaining open and unsatisfied on the records of Lackawanna and Luzerne counties. Aided by that evidence the assessor, doubtless according to the best of his judgment, made the return, including therein, among other things, two mortgages in favor of Mr. Albright, trustee, aggregating over $600,000. To that estimated return the county commissioners, as required by the act, added fifty per centum, in the nature of a penalty. Notice of the assessment thus made and day fixed for appeal was duly served on complainant, but he paid no attention to the matter until payment of the tax was demanded by the collector in whose hands it had been placed for collection. He then appealed to the commissioners for relief, alleging that he was misled by the notice served on him by the assessor, in that "the figures thereon were so pointed off as to indicate an assessment of $642.08 instead of $642,088 and for

that reason he permitted the day of appeal to pass." These facts are substantially admitted by the bill and injunction affidavits.

Assuming that complainant was misled by the notice, as to the aggregate amount of the assessment, it was of course a good reason for according or offering to accord to him a hearing as though he had appeared and demanded it on the day fixed for appeal, but it was no reason for relieving him from the duty of making a corrected return, such as is authorized by the proviso to the 9th section of the act, and which the commissioners might and doubtless would have substituted for the return made by the assessor. The assessment was not rendered void by the alleged mistake of the assessor in erroneously pointing off the figures showing the aggregate amount, or in not returning the mortgages as trust instead of individual securities. At most, these were mere irregularities or errors that could be corrected whenever discovered, subject to complainant's right to be heard, as on appeal, after the correction was made. That right the commissioners were willing to recognize, and accordingly proposed that if complainant would then make the return contemplated by the proviso above referred to, they would substitute the same for the return made by the assessor. One of the commissioners in his affidavit says, complainant called at their office several times and attempted or endeavored to have some portion of the assessment stricken off; that he was requested by the commissioners to make the return provided by law, but he refused to do so.

It is averred in the bill that the two mortgages had been given to complainant as trustee many years ago to secure certain bonds in which he had no personal interest, and that they had, in fact, been paid long before, and "have been satisfied of record;" but, it is not alleged or even pretended that they were satisfied of record at the time they were included in the assessor's return. If they were unsatisfied on the record at that time, the assessor had no right to treat them otherwise than as outstanding securities taxable in the hands of complainant as trustee, and hence it was his duty to include them in his return.

Without intending to question complainant's motives in any-

thing that he did, or omitted to do in the premises, it may be confidently asserted that in every community there are, and probably always will be, those who are anxious to shirk their share of the public burdens, and thereby cast the same upon others. It was to remedy that great and growing evil, and secure, as far as possible, just and fair returns and assessments of personal property taxable for the support of government, that the act under consideration was passed. As was said in Fox's Appeal, 112 Pa. 337, " It was intended to compel each tax payer to disclose to the assessor the full extent of his personal estate, and to avoid the unequal burdens which had been laid upon the shoulders of some persons by the neglect of others to return the full amount of their property. No legal objection can be made to this. If the state has a right to tax moneys at interest in the hands of her citizens, and this cannot be denied, she has the right to know to what extent each citizen holds such property. In the exercise of this right she has the power, and it is part of the taxing power, to require each tax payer to make known to the assessor the extent of his or her property of this description. She has the further right to punish the failure to make such return, by the imposition of a penalty or otherwise, as may best secure the object to be attained."

The provisions of the 9th section apply only to tax payers who neglect or refuse to make the prescribed return. By their own act they are in default, and are prima facie attempting to avoid their share of the public burdens. The assessor is required to make a return for such delinquents, estimating the amount from the best information at his command, to which amount fifty per centum, in the nature of a penalty, must be added; but, in accordance with the fundamental principle that no man shall be condemned in person or property without a hearing, an appeal to the commissioners is provided, for the benefit of those who may consider themselves aggrieved by the assessor's return. That is an ample remedy, and on general principles it may well be regarded as exclusive, except, perhaps, in extraordinary cases. When the tax payer refuses to make his own return, and by his silence acquiesces in that of the assessor, it may be safely assumed the amount returned, plus the added penalty, does not exceed the sum on

which tax is justly payable; and in the absence of more relia-
ble data, that sum may well be taken by the assessor as a safe
guide in making the subsequent return in case the tax payer
does not make it himself.

There is nothing in the facts of this case to take it out of
the general principle recognized in Hughes v. Kline, 30 Pa.
227; Clinton School D.'s Appeal, 56 Pa. 315, and other cases.
In Clinton School District's Appeal, supra, it is said: "All
the cases assert the doctrine that when the general power to
assess exists, the proper remedy for illegal taxation is by
appeal to those to whom the appeal is required to be taken;
and, if none be given, neither the Common Pleas nor this
court can revise the judgment of the tax officers. Indeed, it
would be a most ruinous consequence, if, just when the collec-
tor comes around with his warrant to demand taxes assessed
in due form of law by those having the general power to tax,
a court of equity could interfere by injunction. . . . . It will
not do to permit the collection of taxes to be interfered with
by such persons, unless in the clearest cases of want of juris-
diction in the assessing and collecting officers."

The power to make the return and assess undoubtedly
existed in this case. At most there may have been an error
in returning securities that are alleged to have been previously
paid, and therefore not subject to assessment. That error, if
it be one, would not have occurred if complainant had made
his own return. Then again, after the error was discovered,
the proper correction would doubtless have been made by the
commissioners, if complainant had not refused to comply with
one of the essential conditions on which they were authorized
to act. If he had then made a proper return it should and
doubtless would have been substituted for that made by the
assessor. That such return was not made and presented was
complainant's own fault. There appears to be no equity in
his case, and the injunction was erroneously granted.

Decree reversed and injunction dissolved, and
it is further ordered that the costs of this
appeal be paid by appellee.