American Aniline Products, Inc., Appellant, v. Lock Haven.

*Municipalities—Powers—Business activity—Contracts—Invalid contract—Furnishing water free to a manufacturing corporation— Classification — Discretion — Discrimination — Confiscation — Due process of law — Constitutional law — Public policy — Public Service Corporation.*

1. A municipal corporation can function only through the powers granted by the legislature in its charter of incorporation, or those powers incident or related thereto as essential and necessary to carry out the declared objects contained in such express powers.

2. If there is doubt as to the existence of authority, or whether an act is fairly referable to any delegated powers, the doubt must be resolved against its existence.

3. The power which the city exercises must not contravene any constitutional limitations.

4. Where a municipal corporation engages in an activity of a business such as the supply of light or water, which is generally engaged in by individuals or private corporations, it acts as such corporation, and not in its governmental or sovereign capacity.

5. In such case, the relations to the public created by its ordinances are not legislative, but contractual.

6. Municipalities operating water works and engaged in the business of supplying water, are not subject, as to such service, to regulation by the Public Service Commission.

7. As to such municipalities the courts have the power to determine questions relating to service and rates, where the complaint

is based on reasonableness of the ordained rate, or the justness of their application, or discrimination amounting to confiscation.

8. The proper practice in such case is by bill in equity against the municipality to restrain acts contrary to law or to compel the performance of acts required by law.

9. Where a city is given the power to erect water works, determine rates for those using the water, and to supply water at such prices as may be agreed upon, the city may make rules, regulations and rates governing the service.

10. But these powers do not enable the city to give away the city's money, or property, or services without adequate recompense, nor will laws authorizing it to fix prices or agree on prices, allow it to give water free of charge.

11. The agreement to supply water free of charge is discrimination against other users and void as against public policy, being a continuing charge borne by the taxpayers.

12. A city has a wide discretion in classifying the service, but the classification must be a reasonable one, based on considerations as to quantity, time of use, or manner of service, or other matters which present a substantial difference as ground for distinction.

13. A classification based on a particular business or use for a special purpose will not, without more, justify classification or discriminatory rates.

14. A city cannot enter into a contract to supply water to a manufacturing corporation free of cost where the city had no power to contribute money or property donations for such purpose.

15. All public service contracts are viewed in the light of having been made with an implied provision that the rate named therein is subject to change, according to law, so as to keep it reasonable and nondiscriminatory at all times.

16. To fix conclusive rates is unconstitutional as it denies to the party affected due process of law.

Argued November 23, 1926. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 232, Jan. T., 1926, by plaintiff, from decree of C. P. Clinton Co., in equity, Sept. T., 1925, No. 1, dismissing bill in equity, in case of American Aniline Products, Inc., v. City of Lock Haven. Affirmed.

Bill for injunction. Before BAIRD, P. J.
The opinion of the Supreme Court states the facts.
Bill dismissed. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Henry Hipple,* with him *M. E. Haggerty,* for appellant, cited, as to validity of the agreement in question and whether or not it is discriminatory: Barnes Laundry v. Pittsburgh, 266 Pa. 24; Western S. Fund v. Phila., 31 Pa. 175; Central I. & S. Co. v. Harrisburg, 271 Pa. 340; Penn Iron Co. v. Lancaster, 25 Pa. Superior Ct. 478; Wheeler v. Phila., 77 Pa. 338; White v. Meadville, 177 Pa. 643; Baily v. Phila., 184 Pa. 594.

As to validity of oral agreement with municipality, acted upon and ratified by municipality for a period of eighteen months subsequent thereto: Palmer v. Mfg. Co., 62 Pa. Superior Ct. 598; Penn Iron Co. v. Lancaster, 25 Pa. Superior Ct. 478.

*B. F. Geary,* for appellee.—The principle that all public rates and levies must be uniform, reasonable, of general application and not discriminatory has been established by long lines of decisions, which have been followed down to the present time: Consolidated Ice Co. v. Pittsburgh, 274 Pa. 558; Central I. & S. Co. v. Harrisburg, 271 Pa. 340; Barnes Laundry Co. v. Pittsburgh, 266 Pa. 24; Suburban Water Co. v. Boro., 268 Pa. 243.

A mere fact that water was furnished under the ordinance, and was accepted and paid for by plaintiff, is not sufficient from which to imply an agreement by so furnishing from year to year: Hutchinson Baking Co. v. Marvel, 270 Pa. 378.

The entire want of consideration and lack of mutuality should be sufficient to base a finding that the contract itself is void and of no effect: Hutchinson Baking Co. v. Marvel, 270 Pa. 378.

OPINION BY MR. JUSTICE KEPHART, January 10, 1927:

The City of Lock Haven operates its own water supply and for more than twenty-five years it offered, as an inducement to corporations intending to locate at that

place, free water for a period of ten years. It agreed to and did furnish, in accordance with its custom, water to the Stanley Aniline Chemical Works. This company was adjudged a bankrupt, and the property sold to appellant. Prior to the sale, appellant had been solicited to make the purchase, and its officers, with some citizens, appeared before city council for the express purpose of reaching an understanding on the subject of water supply. It was then verbally agreed between appellant and the city council that the agreement theretofore made with the Stanley Company would be carried out and the city would continue to furnish appellant a certain quantity of water free of charge for the balance of the ten years. Relying on this agreement, appellant purchased the plant at the trustee's sale. It operated the works for eighteen months during which time no charge was made for water.

In 1920 the city altered its system of service, placed meters in all establishments and fixed a per thousand gallon rate. A charge, under this schedule, was made against appellant, and as there was an unpaid bill of over $1,000 which it refused to pay, the city, in compliance with its regulations, was about to shut off the water supply. A bill to enjoin the threatened action was filed and dismissed by the court below.

The only question necessary for us to consider is whether the city had the power to make the agreement here set up.

A municipal corporation can function only through the powers granted by the legislature in its charter of incorporation, or those powers incident or related thereto as essential and necessary to carry out the declared objects contained in such express powers. Beyond such grant of authority, a municipality possesses no powers by implication. If there is doubt as to the existence of authority, or whether an act is fairly referable to any of the delegated powers, the doubt must be resolved against its existence. (See Appeal of Whelen,

108 Pa. 162.) Further, the power which the city exercises must not contravene any constitutional limitations, either state or federal.

When a municipal corporation engages in an activity of a business, rather than one of a governmental nature, such as the supply of light or water, which is generally engaged in by individuals or private corporations, it acts as such corporation, and not in its sovereign capacity: Western Saving Society v. Phila., 31 Pa. 185. The relation to the public created by its ordinances are, in such cases, not legislative, but contractual. It was because municipalities were similar to private corporations in supplying water that the controversy arose as to whether or not the Public Service Commission could regulate that service. We held in Barnes Laundry Co. v. Pittsburgh, 266 Pa. 24, where the question was elaborately treated, that municipalities were not included in the Public Service Act because the statute expressly eliminated them, and they could not, therefore, be brought in by implication.

This does not mean that cities engaged in the business of supplying water are not subject to any control. Courts have the power to determine questions relating to service and rates where a complaint is based on "reasonableness of the ordained rate or the justness of their application," or discrimination amounting to confiscation. "It is not competent for the State to enact that the rates [for public utilities] fixed either by the legislature or by a commission or municipality,......are conclusive ......; for such an act would be unconstitutional because it denies to the party affected due process of law, and, by depriving it of the lawful use of its property, it in substance and effect deprives it of the property itself, and of the equal protection of the laws contrary to the express provisions of the 14th Amendment......" Barnes Laundry Case, supra, p. 42. The proper practice (apart from legislative procedure) is by bill in

equity to restrain acts contrary to law or to compel the performance of acts required by law.

Lock Haven, under the Act of June 27, 1913, P. L. 568, is a city of the third class. Prior thereto, it was governed by the special Act of March 28, 1870, P. L. 619, and, while a borough, by the Act of May 25, 1840, P. L. 529. By the Act of March 26, 1867, P. L. 577, 578, the municipality was authorized to erect water works, and determine rates or prices for those using the water. By article V, section 3, clause 43, of the Act of 1913, supra, council was given the right to supply water at such prices *as may be agreed upon*. Under this act the city may make rules, regulations and rates governing the service.

But these various charts of government under which a municipality functions do not empower it to give away the city's money, or property, or services without adequate recompense, nor would these laws authorizing it to fix rates or agree on prices allow it to give water free of charge. These conclusions are based on the following reasons:

The agreement of a city to supply water free of charge is discrimination against other users and void as against public policy. There is no difference in this respect between a municipality dealing in a commodity of a public interest, and a public service company dealing in a commodity of a similar nature. The discriminatory engagements of both are prohibited as matters of public policy for reasons so frequently stated, we need not repeat them here. The gift is of a commodity, the cost of the production of which is a continuing charge borne directly by the taxpayers. It increases the burden on the part of the public to their prejudice to defray the expense necessary to its production.

A city has a wide range of discretion in classifying the service, but the classification must be a reasonable one, based on considerations as to quantity, time of use or manner of service, or other matters which present a

substantial difference as ground for distinction. A classification based on a particular business or use for a special purpose will not, without more, justify classification or discriminatory rates. We do not intimate in Barnes Laundry Co. v. Pittsburgh, supra, that a classification can be made whereby one of the classes receives water free of cost. On the contrary, we state that a "city operating a legalized monopoly, in the nature of a water plant, cannot give undue or unreasonable preference or advantage to, or make unfair discrimination among customers, any more than a private corporation similarly situated;" to give water away to a manufacturing plant is a discrimination. Appellant urges, however, that in Central I. & S. Co. v. Harrisburg, 271 Pa. 340, we decide that "if a city stipulates to supply a customer [with water] under special agreement for a specified term at a fixed price, it will be held to its obligation (Penn Iron Co. v. Lancaster, 25 Pa. Superior Ct. 478) ; but, as in all cases, one claiming to enforce a contract must establish the fact that there was such an understanding, express or implied, as he seeks to enforce," and the contract would be binding, assuming it was founded on a real consideration. This expression in that case must be read in connection with the express reference to discrimination mentioned in other parts of the opinion. In the Barnes Case, supra, p. 43, we said, "Neither by ordering nor using a necessity like water, from a plant which enjoys a monopoly of supply, can one be held estopped ......on the theory of implied contracts or otherwise (4 McQuillan on Municipal Corporations, section 1725, p. 3690; Id. p. 3729, n.8) from the right, in a due and proper proceeding, to question either the reasonableness of the ordained rate or the justness of its application, for rates unlawfully exacted .are treated in law as though assented to under duress......" The converse of this rule, "that the city may enforce its rates as to contracts in existence" must be considered in connection with what is said in Suburban Water Co. v. Oak-

mont Boro., 268 Pa. 243, 252, 253. It must be remembered that a city's power to regulate rates and service is as extensive as a public service company's. We said in the latter case, "All public service contracts are viewed in the light of having been made with an implied provision that the rate named therein is subject to change, according to law, so as to keep it reasonable and nondiscriminatory at all times."

The reason for this rule is simple, as shown by the many cases which hold that "the change of a rate fixed by contract for the performance of service by a public utility company does not impair the obligation of the contract under the Constitution of the United States, and, if it did, the change would be unlawful...... The contract is simply modified or reformed so as to include for the time being the new rate fixed by law. The power to reform contracts of this kind was granted under the Act of 1874, giving the courts jurisdiction over rates."

So, even if we assume that the contract is legal, still it is subject to the change herein mentioned. The principle is controlled by what we said in Barnes Laundry Case, supra, that a city operating a legalized monopoly in the nature of water, cannot give undue or unreasonable preference or advantage or make unfair discrimination among customers any more than a private corporation similarly situated.

The gift of water, for purposes like the one before us cannot be sustained where the municipality does not have power to contribute money or property donations for purposes like the one now under consideration.

After a careful consideration, the decree of the court below is affirmed at cost of appellant.