Penn Galvanizing Co., Appellant, *v.* Philadelphia.

Argued January 11, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Abraham Shapiro,* for appellant.

*James L. Stern,* Deputy City Solicitor, with him *David Berger,* City Solicitor, and *Gordon Cavanaugh*

and *Karl I. Schofield,* Assistant City Solicitors, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 29, 1957:

This is an appeal from the order of the Court of Common Pleas of Philadelphia which sustained the preliminary objections of the City and dismissed the plaintiff's bill in equity.

Plaintiff is the owner of two commercial properties in the City of Philadelphia, and was a user of water supplied by the City in the years prior to 1952. The water meters measuring this use did not operate properly and failed to register the water consumed at each property during parts of 1948 and 1949. This situation was not unique. A great many meters throughout the City fell out of repair during the war, and, due to shortages of material, many were not repaired until long after its conclusion. The practice of the City during that period was to remove the meters for repair, and, after their reinstallation, to estimate the water used during the period that the meters were defective on the basis of the amount subsequently consumed. This situation was largely remedied by the City after 1952 through its universal water metering program under which it adopted more stringent inspection practices and under which it replaced defective meters immediately with properly registering ones, rather than waiting until the defective meters were repaired.

On January 3, 1951 the City estimated the excess water consumed at one of plaintiff's properties for the period during which its meter was defective, and billed the plaintiff accordingly. This bill was promptly paid on January 12, 1951.

On March 31, 1952 the City's Department of Collections rendered a bill to the plaintiff for the excess

water consumed from July 26, 1948 to December 6, 1949 at the latter's other property, during which time the meter on that property was not properly registering. This bill, the plaintiff alleges, is excessive, and it has refused to make payment thereof, averring in its complaint, however, that ". . . it has at all times offered to pay, and is still willing to pay the amount thereof for water consumed and actually measured, if the Department of Collections will properly state the amount thereof.".

The complaint then goes on to refer to an ordinance enacted by the Council of the City of Philadelphia on October 12, 1955, the provisions of which are: "Section 1. No excess water and sewer charge shall be made on bills originally issued in 1955 in connection with water consumed for any period prior to January 1, 1952, during which the water meter was removed by the City for repairs, or during which the water meter failed to register water consumption through no fault of the owners or occupiers of the premises wherein the meter is situate; the charges for the use of City water and sewers during such period shall be limited to the minimum charges for such uses. Section 2. (a) The Revenue Commissioner is hereby authorized and directed to make refunds to persons who have paid excess water meter and sewer reset bills originally issued in 1955, and any interest or penalty thereon, for a period prior to January 1, 1952, during which period the water meter was removed by the City for repairs, or during which period the water meter failed to register water consumption through no fault of the owners or occupiers of the premises wherein the meter is situate. The approval of the Tax Review Board shall not be required with respect to such refunds. (b) Such refunds shall not be made unless a written request is filed therefor with the Department of Collections on

or before April 30, 1956, by the persons who have paid such excess water meter and sewer reset bills.".

Thereafter the complaint avers that the plaintiff has requested the Department of Collections to refund the sum paid on January 12, 1951, and that it has requested cancellation of so much of the bill rendered on March 31, 1952 as is based on estimates of earlier consumption. This the Revenue Commissioner of the City has refused to do, claiming that the ordinance applies only to those consumers of water used prior to January 1, 1952 who first received bills therefor in 1955, and not to those who, like plaintiff, received their bills at an earlier date.

Thereupon, "Plaintiff avers that such a construction is unfair, inequitable and discriminatory against the plaintiff and others similarly situated.", and prays (1) that the City be enjoined from enforcing any claim against plaintiff based on estimates of excess water consumed prior to January 1, 1952; (2) that the Revenue Commissioner be directed to cancel so much of the March 31, 1952 bill as is based on an estimate of water consumed prior to January 1, 1952; (3) that the City be directed to refund the amount paid on January 12, 1951; (4) that the City ". . . be enjoined from making any refunds to any consumers of water prior to January 1, 1952, whose payments were made based on estimates of such consumption."; and (5) that the City ". . . be enjoined and restrained from cancelling any charges based on estimated consumption of water prior to January 1, 1952, by any consumers, regardless of the dates on which said estimated consumption was first billed.".

The City filed preliminary objections to the complaint in equity alleging that the bill stated no cause of action; that the ordinance of October 12, 1955 did not apply to plaintiff; that plaintiff has no standing

to apply for the injunction since the complaint fails to demonstrate any interest adversely affected by the ordinance; that the plaintiff has an adequate remedy at law; and that the administrative remedy of appeal to the Tax Review Board has not been exhausted.

The court below found that in so far as it pertained to the water rent paid by the plaintiff or to the excess water rent billed to the plaintiff, the complaint failed to state a cause of action, and also that the plaintiff had not exhausted the administrative remedy of appeal to the Tax Review Board as provided by the City Ordinance of September 9, 1953. As an additional ground for its decision, the court considered the position of the plaintiff to be "in the alternative in the nature of a taxpayer's suit", and in this sense it reviewed the validity of the Ordinance of October 12, 1955, and found the Ordinance to be valid. The court thereupon sustained the City's preliminary objections and dismissed the plaintiff's complaint.

The first three of plaintiff's prayers for relief go to the bills rendered to plaintiff itself by the City on January 3, 1951 and March 31, 1952, the former having been paid on January 12, 1951, and the latter never having been paid. As to these prayers we think it unquestionable that plaintiff is barred from equitable relief because it had the administrative remedy of appeal to the Tax Review Board created by the Ordinance of September 9, 1953, Ordinances of the City of Philadelphia of 1953, p. 478, Code of General Ordinances of the City of Philadelphia §19-1700, et seq.,[1] from which appeal may be taken to the Court of Common Pleas, or it could have petitioned for relief against an attempted collection of the water rent under Section 14

[1] (Prior to that enactment its administrative remedy was by application to the Receiver of Taxes under the Ordinance of July 18, 1944, Ordinances of the City of Philadelphia of 1944, p. 119.)

of the Act of May 16, 1923, P. L. 207, 53 PS §7182 (1957 Ed.). It failed to aver that it did either. It is fundamental that equity will not grant relief to a taxpayer who has an adequate remedy at law, and who has failed to pursue that remedy: *Appeal of Hewitt et al.,* 88 Pa. 55; *Appeal of Chas. F. Van Nort,* 121 Pa. 118, 15 A. 473; *Bradford Township Taxpayers Protective Association v. McKean County Board of Assessment and Revision of Taxes,* 370 Pa. 468, 88 A. 2d 782; *Narehood v. Pearson,* 374 Pa. 299, 96 A. 2d 895, and cases cited therein at p. 308 et seq. And this rule has been specifically applied where the appropriate remedy was under §14 of the Act of May 16, 1923, supra, in the case of *Baldwin v. The City of Erie et al.,* 94 Pa. Superior Ct. 106.

But the court below went on to treat this case as a taxpayer's suit and considered the validity of the questioned ordinance, apparently on the basis of the plaintiff's last two prayers for relief. This it should not have done for the complaint could not properly be considered a class or taxpayer's bill.

In the first place, the complaint is neither styled nor pleaded as a class or taxpayer's action. In a class action the complaint should be so titled and the pleadings so framed as to identify it as a class action and to give some indication of the class being represented, *Wilson v. Blaine et al.,* 262 Pa. 367, 105 A. 555. As is pointed out in 4 Anderson Pennsylvania Civil Practice 351 in the comment on plaintiff's pleading under Pa. R. C. P., Rule 2230 (concerning class actions): "In order to establish on the record that the action is a class action and not merely an action brought by or against several individuals, it is necessary for the class plaintiff or plaintiffs to aver that they are representatives of the class. To illustrate, if A, B and C are members of a class and bring suit against D

on behalf of the class, the caption reads 'A, B and C v. D,' which is apparently a suit by them in their own right against D. (sic) In order to bring on the record that it is a class action, it is necessary to aver in the body of the pleading that 'the plaintiffs, A, B and C, are creditors of D and bring this action on behalf of themselves and all other creditors of D' or that they were unsecured creditors and brought the action on behalf of themselves and all unsecured creditors, or any other form of words which conform to the facts to show that the plaintiffs are acting in a representative capacity.". This is not a mere formalistic requirement. The complaint should be such that its character as a class action rather than an individual suit be manifest on its face to a defendant and to the court. Certainly the consequences to a municipality in a taxpayer's class action may be vastly different from those in which only a single taxpayer is involved. Furthermore, Pa. R. C. P. 2230(b) concerning the discontinuance, compromise and dismissal of class actions lays down a special rule to be followed by the court when the action concerns a class, rather than an individual. A trial judge should never be placed in the position of the court below in the case at bar when it had to speculate: "While it is certainly not clear in plaintiff's Complaint, we deem its position to be in the alternative in the nature of a taxpayer's suit, . . .".

Secondly, assuming that the complaint was properly framed as a class action, the relief prayed for in those portions of the complaint which might be construed as being made on behalf of a class, would in no way benefit the class plaintiff seeks to represent. So far as we can determine, it appears that plaintiff seeks to represent those who, like himself, have paid or are obliged to pay bills rendered before 1955 based on estimated water consumed prior to 1952. This

would be the class as to which plaintiff contends the application of the ordinance is "unfair, inequitable and discriminatory". The fourth and fifth prayers of the complaint ask that the City be enjoined *from making any refunds or cancelling any charges.* Prior to the time the ordinance went into effect plaintiff, and those similarly situated, had either paid for the estimated water consumed before 1952, or had been billed and were indebted for water so used, and after the effective date of the ordinance they still either owed the water rents or had paid them. And should the relief thus prayed for in the complaint be granted, their situation would remain unchanged. They would still owe the water rent or have paid it without refund. Clearly in an action assertedly brought on behalf of a class, it must appear that the relief sought will benefit the class. Equity cannot be called upon to undertake a useless objective.

Lastly, if, rather than as a suit for the benefit of a specified class, the proceeding is treated as a taxpayer's action, it must fail because the interest of the plaintiff taxpayer is not sufficiently representative of the common interest of *all* the taxpayers in the community to allow plaintiff alone to prosecute a taxpayer's action in their collective behalf. In *Schlanger v. West Berwick Borough,* 261 Pa. 605, 104 A. 764, where a property owner brought a taxpayer's bill in equity to enjoin the borough from collecting an assessment against him to pay for paving a street upon which his property abutted, because the borough council had already created a fund to pay for such improvements from tax and debt sources, this Court held that a demurrer to that bill was properly sustained, saying, at p. 607: "A taxpayer's bill is essentially a class bill and can be filed only in the common interest of all the taxpayers of the municipality, to prevent the wrongful

expenditure of the money of the municipality or the wasting of its assets. This bill, however, is not filed to prevent the expenditure of the money of the municipality, but to compel its expenditure for the benefit of plaintiff and the other property owners on said streets only. They are not the only taxpayers of the borough, and the matter is therefore squarely within the principle of Gray v. Chaplin, 2 Sim. & Stew. 267, that: 'In order to enable a plaintiff to sue on behalf of himself and others who stand in the same relation with him to the subject of the suit, it must appear that the relief sought by him is in its nature beneficial to all those whom he undertakes to represent.' That principle is sound, and, so far as we are aware, has never been departed from.". To similar effect see *Ashcom et al. v. Westmont Borough,* 298 Pa. 203, 148 A. 112, and *Gericke et al. v. Philadelphia et al.,* 353 Pa. 60, 44 A. 2d 233. In the case at bar, plaintiff's pecuniary interest is adverse to the interests of the taxpayers at large. This is patent when one notes that in the first three prayers for relief in plaintiff's complaint, it is asking, in effect, for a diminution of the public treasury by the amount it paid therein on January 12, 1951 and by a cancellation of the account receivable due from it since March 31, 1952. Reversing its ground in the last two prayers for relief, it purports to have itself considered the representative of all taxpayers as the defender of the public coffer from *all* seeking relief from water bills based on excess water consumed prior to 1952. This abrupt turnabout cannot conceal the real interest of this plaintiff, which is at complete variance with a purported taxpayer's interest in protecting the City Treasury by enjoining the application of the City Ordinance of October 12, 1955.

Moreover a taxpayer's action in the circumstances of the instant case will not be entertained because a

taxpayer's bill in equity ordinarily will not lie in a case where there is an adequate remedy at law, *Bradford Township Taxpayers Protective Association,* supra; *Narehood v. Pearson,* supra; and cases cited therein.

The real nub of plaintiff's position is that it wishes to be included within the coverage of the ordinance, despite the unequivocal language excluding it. This is a quarrel which it might pursue before the legislative organ which enacted the ordinance, but certainly the courts should not be called upon to aid it toward that end.

For the reasons stated, we are of the opinion that appellant had no standing to attack the Ordinance of October 12, 1955 as the representative of a class and that its complaint was properly dismissed because of the adequacy of remedy at law.

Order affirmed, costs on appellant.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

I dissent.

The lower Court properly considered the appellant's complaint as alternatively constituting a taxpayer's bill. The ordinance provided, inter alia, that rebates and refunds were to be restricted to those cases in which the claim concerned water consumed prior to January 1, 1952, *but only where* the bills therefor were *originally issued in 1955.* The ordinance makes the right to a rebate and/or refund *dependent not on the period during which the water was used, but on the date when the bill was rendered*—promptly or negligently by a city clerk.

This favored class—with no reasonable or justifiable basis for their classification—were thus to receive

their water free. In the analogous case of *American Aniline Products, Inc. v. Lock Haven,* 288 Pa. 420, 135 A. 726, this Court said (page 425-426) : "The agreement of a city to supply water free of charge is discrimination against other users and void as against public policy. There is no difference in this respect between a municipality dealing in a commodity of a public interest, and a public service company dealing in a commodity of a similar nature. The discriminatory engagements of both are prohibited as matters of public policy for reasons so frequently stated, we need not repeat them here. The gift is of a commodity, the cost of the production of which is a continuing charge borne directly by the taxpayers. It increases the burden on the part of the public to their prejudice to defray the expense necessary to its production.

"A city has a wide range of discretion in classifying the service, but the classification must be a reasonable one, based on considerations as to quantity, time of use or manner of service, or other matters which present a substantial difference as ground for distinction. A classification based on a particular business or use for a special purpose will not, without more, justify classification or discriminatory rates. We do not intimate in Barnes Laundry Co. v. Pittsburgh, supra, that a classification can be made whereby one of the classes receives water free of cost. On the contrary, we state that a 'city operating a legalized monopoly, in the nature of a water plant, cannot give undue or unreasonable preference or advantage to, or make unfair discrimination among customers, any more than a private corporation similarly situated;' to give water away to a manufacturing plant is a discrimination."

If this ordinance is sustained, certain special water consumers will escape liability, not because of the

382

quantity of water consumed or the time of use, or matters of service, but simply because a clerk in the City's water department neglected or failed to *bill them* prior to 1955 for the water they consumed prior to 1952.

It is clear that such a classification is arbitrary, unreasonably discriminatory, and therefore unconstitutional. *American Aniline Products, Inc. v. Lock Haven,* 288 Pa., supra; cf. also *Lord Appeal,* 368 Pa. 121, 81 A. 2d 533; *Allentown School District Mercantile Tax,* 370 Pa. 161, 87 A. 2d 480; *Commonwealth v. Budd Co. and Commonwealth v. Westinghouse Electric Corp.,* 379 Pa. 159, 108 A. 2d 563.