## Galdo v. First Pennsylvania Bank

*Theodore Mann* and *Barry E. Ungar*, for plaintiff.

*Eugene F. Waye*, for defendant.

KALISH, *J.*, February 3, 1976—Before us are two interrelated matters. The first is intervenor-plaintiffs' motion for class action determination seeking designation of Ben Weinstein as representative of the class consisting of all persons who held six and one-half percent convertible subordinated debentures due September 1, 1979, of Hilco Homes Corporation between January of 1967 and

April of 1972.[1] The second is defendant's preliminary objections to the amended complaint of plaintiffs and intervenor-plaintiffs, said objections being in the nature of a motion to strike the class action averments contained in the amended complaint and, alternatively, as a petition seeking dismissal of plaintiffs' motion on the ground they lack the capacity to sue on behalf of the class. We dismiss defendant's preliminary objections and certify the action as a class suit as discussed hereinafter.

## PLAINTIFFS' MOTION FOR CLASS ACTION DETERMINATION

Plaintiffs, by this action seek to recover on behalf of themselves, and all others similarly situated, compensatory and punitive damages from First Pennsylvania Banking and Trust Company ("First Pennsylvania") for alleged violations of its fiduciary duty as trustee for debenture holders under an indenture dated September 1, 1961, from Hilco Homes Corporation ("Hilco"). The amended complaint alleges that First Pennsylvania had knowledge of certain acts by Hilco which constituted defaults under the provisions of the indenture but failed to notify the debenture holders "until

---

1. Joseph and Rosanna Galdo, original plaintiffs herein, were forced to withdraw from active participation in this case because of illness. Thereupon, Martin Cohen and Ben Weinstein were granted leave of court to intervene as parties-plaintiff. Subsequently, on September 5, 1975, Cohen was named as an additional defendant by First Pennsylvania Banking and Trust Company. This has resulted in his being voluntarily withdrawn as a class representative. Counsel for plaintiffs now requests that the court regard Ben Weinstein as the sole representative of the class.

many years later when Hilco was hopelessly insolvent and the debentures had become worthless." It is further alleged that First Pennsylvania concealed the facts surrounding the defaults and misrepresented its activities on behalf of the debenture holders.

Plaintiffs aver that the class comprises approximately 310 persons and entities holding, in the aggregate, debentures having a face value in excess of $350,000.

The maintenance of a class action in our State courts is governed by Pa.R.C.P. 2230(a), which provides:

"If persons constituting a class are so numerous as to make it impracticable to join all as parties, any one or more of them who will adequately represent the interest of all may sue or be sued on behalf of all, but the judgment entered in such action shall not impose personal liability upon anyone not a party thereto."

Accompanying Rule 2230(a) is a note of the Procedural Rules Committee which states, in relevant part:

"This subsection adopts the practice under . . . [Federal Rule of Civil Procedure] No. 23(a) in providing for a class suit where the members of a class are so numerous as to make it impractical to join all as parties."[2]

By its provisions, Pa.R.C.P. 2230(a) establishes three explicit prerequisites for the maintenance of a class suit. These are: (1) The existence of a defin-

---

2. Our courts may follow decisions under the Federal rule where they are persuasive, but are not bound by them. See McMonagle v. Allstate Insurance Company, 460 Pa. 159, 331 A. 2d 467 (1975).

able class; (2) numerosity of class members rendering it impracticable to join all as parties to the action; and (3) adequate representation by one or more members on behalf of all. Plaintiffs have satisfied these criteria.

The class, averred to consist of approximately 310 persons and entities holding Hilco debentures, has been defined with "some precision" and cannot be considered "amorphous": Dolgow v. Anderson, 43 F.R.D. 472, 492-93 (E.D. N.Y., 1968), quoting Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D. N.Y., 1966). The exact number of class members, their identities and last known addresses can be readily obtained from defendant's records. Clearly, a class in excess of 300 members, as conceded by defendant, is sufficiently large to render joinder impractical.[3]

The remaining requirement is that the class representative "adequately represent the interest of all [class members]." For the court to determine whether plaintiff Weinstein has this ability "it must appear that the relief sought is beneficial to the class . . . and that the plaintiffs' interest [is] consonant with [that] of the other members. . . .": Luitweiler v. Northchester Corporation, 456 Pa. 530, 534, 319 A. 2d 899, 902 (1974). Accord, Oas v. Commonwealth, 8 Pa. Commonwealth Ct. 118, 301 A. 2d 93 (1973); Penn Galvanizing Co. v. Philadelphia, 388 Pa. 370, 130 A. 2d 511 (1957). This has

3. "Fifty class members would probably be sufficient to maintain a class action in most of Pennsylvania's lower courts.": Donne and Van Horn, Pennsylvania Class Actions: The Future in Light of Recent Restrictions on Federal Access, 78 Dickinson Law Rev. 460, 501 (1974), citing Jones v. Zimmerman, 11 Leb. Co. 391 (1967) (82 members sufficient). See, also, Straw v. Lake City Borough, 29 D. & C. 2d 187 (1962) (16 members insufficient).

been shown. Here, the relief sought is facially beneficial to the class as it is directed toward recouping the investment made in the now worthless debentures. Further, Weinstein's interest is consonant with the class in that he stands in the same relationship with First Pennsylvania as the other members, i.e., as a debenture holder, and would benefit to the same extent should the relief sought be granted.

Due to the critical relationship between adequate representation and due process of law, however, further consideration of this issue is obligatory, since any judgment rendered "conclusively determines the rights of absent class members.": Eisen v. Carlisle and Jacquelin, 391 F. 2d 555, 562 (2nd Cir., 1968). See also Hansberry v. Lee, 311 U.S. 32 (1940).

In this regard, the Federal courts have consistently held that, in addition to "commonality of interest" among class members, it need "appear that the representative will vigorously prosecute the interests of the class through qualified counsel.": Gonzales v. Cassidy, 474 F. 2d 67, 72 (5th Cir., 1973).

This criterion has also been satisfied. Weinstein's testimony at the evidentiary hearing conducted by this court is pervaded with a sense of indignation directed at defendant and a determination to "do battle." Defendant's characterization of him as being "belligerent and prejudiced" is not adverse. His attitude toward First Pennsylvania clearly manifests a tenacious disposition to follow through with the litigation. As was stated in Dorfman v. First Boston Corporation, 62 F.R.D. 466, 473 (E.D. Pa., 1974):

"[P]rinciple, coupled with the hope of rectifying a claimed loss and the prospect of a substantial recovery, may be as strong a spur to vigorous prosecution as many other motivations."

Moreover, counsel retained by plaintiffs, as conceded by defendant, has proved to be "qualified, experienced and . . . able. . . .": Eisen v. Carlisle and Jacquelin, supra, at page 562.

The central thrust of defendant's argument, however, is that Weinstein[4] should, nevertheless, be disqualified as class representative because of his alleged "irresponsible ignorance" of the facts of the case. We cannot agree. The complexities and inherent difficulties in this type of litigation and subject matter are not quickly comprehended by the average laymen, nor do they become so merely by assumption of the role of plaintiff. It is not sophistication which makes an adequate class representative, but a determined effort to put up a "real fight"[5] as evidenced here.

"Even unknowledgeable and inexperienced Plaintiffs might meet the requirements [of adequate representation] *by demonstrating a keen interest in the progress and outcome of the litigation.*": (Emphasis supplied.) In re Goldchip Funding Company, 61 F.R.D. 592 (M.D. Pa., 1974).

Defendant also alleges that Weinstein's approval of expending the money collected to finance this litigation is somehow a ground for disqualification. We find this argument lacking.

4. The arguments advanced by First Pennsylvania against Cohen's representative status have been mooted by his withdrawal and need not be reached herein.

5. Dolgow v. Anderson, 43 F.R.D. 472, 494 (1968). See, also, Chaffee, Some Problems of Equity, 231 (1950).

Weinstein *himself*, in response to Cohen's solicitation, contributed a percentage proportion of his investment to finance the litigation. That he now approves of expending the money hardly seems opprobrious.

Defendant argues, however, that Weinstein has been tainted, in effect, by his tacit acquiescence in Cohen's solicitation efforts which it has characterized as amounting to misrepresentation. We do not agree. Cohen's solicitation of funds was not, of itself, an "abuse of the class action process": J. M. Woodhull, Inc. v. Addressograph-Multigraph Corporation, 62 F.R.D. 58 (S.D. Ohio, 1974). Any confusion arising from Cohen's use of different amounts as the minimum needed to begin suit resulted from refinements and changes in strategy adopted by plaintiff's counsel and not as part of an insidious effort to mislead. Cohen's alleged "promise" *to return the contributions received was* predicated upon the eventuality of not receiving *sufficient* moneys to *begin* suit. When it became obvious that the amount actually received would satisfy initiation of the action, suit was brought as intended. Even assuming arguendo, however, that some impropriety existed, since Weinstein did not participate in the solicitation, any fault should not by implication be extended to him.

The letter from Samuel Burkhardt to Cohen, referred to by defendant, seeking a return of his $25 contribution *on the assumption that nothing was being done with the case* is not persuasive on the issue of Weinstein's adequacy of representation either, as it was received *subsequent* to commencement of the action. Additionally, the record is devoid of any evidence concerning what actually

was done with Mr. Burkhardt's letter, but as it was a personal communication to Cohen, we will not impute mischief to the class or its representative. See J. M. Woodhull, Inc. v. Addressograph-Multigraph Corporation, supra.

In its answer and memorandum in opposition to plaintiff's motion, defendant has also raised an allegation that counsel for plaintiffs must withdraw from participation in this action because one of the attorneys involved testified at the evidentiary hearing. This argument is without merit.

Pa.R.C.P. 222 provides:

"Where any attorney acting as trial counsel in the trial of an action is called as a witness in behalf of a party whom he represents, the court may determine whether such attorney may thereafter continue to act as trial counsel during the remainder of the trial."

Prior to the giving of testimony by counsel, the attorney involved and the court engaged in the following colloquy:

"MR. MANN: Let me do this. I ask the Court to rule in advance before I do so, that I may, without being disqualified as counsel in the case, make a statement to the Court as evidence on the subject of the fees and cost billed in this matter.

"THE COURT: I will permit it."

As the testimony given by counsel related solely to the "nature and the value of legal services rendered in the case. . ." (A.B.A. Code of Professional Responsibility, DR 5-101 (B)(3)), and is recognized as an exception to the general rule that counsel may not continue his representation in the trial after testifying as a witness on behalf of his

client (Kraynick v. Hertz, 443 Pa. 105, 277 A. 2d 144 (1971)), the court did not abuse its discretion in permitting counsel to continue in his representation. See Commonwealth v. Gatewood, 221 Pa. Superior Ct. 399, 293 A. 2d 80 (1972).

On the basis of the facts and circumstances of the instant case, we conclude that Weinstein will adequately represent the interests of the class.

## DEFENDANT'S PRELIMINARY OBJECTIONS TO THE AMENDED COMPLAINT

As defendant's preliminary objections are specifically directed to the class action averments contained in the amended complaint and do not raise any additional issues, our determination of plaintiffs' motion for class action determination is dispositive as to them.

Accordingly, based upon the foregoing analysis, the court enters the following

## ORDER

And now, February 3, 1976, it is hereby ordered and decreed as follows:

(1) Defendant's preliminary objections to the amended complaint of plaintiffs and intervenor-plaintiffs are dismissed.

(2) Intervenor-plaintiffs' motion for class action determination is granted and Ben Weinstein is hereby designated representative of the class of persons who held six and one-half percent convertible subordinated debentures of Hilco Homes Corporation at any time after January 1, 1967, and before April 30, 1972.