## Ohlinger et al. v. City of Reading.

*David Sharman, Jr.*, for plaintiffs.

*John G. Rothermel*, City Solicitor, and *George B. Balmer*, Assistant City Solicitor, for defendant.

SCHAEFFER, P. J., March 17, 1930.—This is a suit in *assumpsit* for the purchase price of two lots of land. The statement of claim, although it contains some unnecessary averments, does set forth that the plaintiffs were the owners in fee simple of two lots of land, with dwelling house, &c., thereon erected, situate in Maidencreek Township, this county; that the defendant is a municipal corporation and is engaged in the business of supplying, for a consideration, its inhabitants and communities adjacent to it with water; that on March 17, 1926, the defendant, by ordinance, appropriated and condemned plaintiffs' property for water-shed purposes; that defendant entered upon and occupied plaintiffs' land; that on Dec. 28, 1927, after negotiations for settlement of plaintiffs' damages, the mayor and council of the city, at a regular session of city council, passed an ordinance providing for the purchase of plaintiffs' land for the sum of $13,000, payment to be made "upon delivery of deed on or before Jan. 21, 1928, in fee simple, free of all liens and encumbrances, and upon possession being given, and that this purchase price be paid from Item PWD 92 in the annual appropriation to the Bureau of Water, Department of Parks and Public Property for the fiscal year 1927;" that

plaintiffs thereupon removed from and vacated the premises, and on Jan. 7, 1928, tendered a deed in fee simple, duly signed and acknowledged, together with the keys to the building, to Mayor Stump and demanded payment of the consideration, but that acceptance of deed and keys was refused and the money was not paid; hence the suit.

The city, as was its right, did not file an affidavit of defense.

The trial having resulted in a verdict for the plaintiffs, defendant has now moved for judgment *n. o. v.* and for a new trial.

Upon the trial it developed that on Jan. 11, 1928, an ordinance was passed by council which repealed Bill No. 202, passed Dec. 28, 1927, for the purchase by the city of plaintiffs' property. We instructed the jury that, if they found that there was a valid contract between the city and the plaintiffs for the purchase of the latter's property, the Ordinance of Jan. 11th, purporting to repeal Ordinance No. 202, was ineffectual and such attempted repeal amounted to nothing. At the close of the charge defendant excepted to this instruction and now challenges it.

In a consideration of the effect of the Ordinance of Jan. 11, 1928, as a repeal of the Ordinance of Dec. 28, 1927, we start with the proposition that a municipality that engages in the supply of commodities such as water or gas does so as a private corporation and not as a governing body; water and gas are usually supplied by private corporations, and when municipal corporations, pursuant to law, enter upon those activities, they are not performing a governing function. "When a municipal corporation engages in an activity of a business, rather than one of a governmental nature, such as the supply of light or water, which is generally engaged in by individuals or private corporations, it acts as such corporation and not in its sovereign capacity: Western Saving Fund Society v. Philadelphia, 31 Pa. 185. The relation to the public created by its ordinances are, in such cases, not legislative, but contractual:" American Aniline Products, Inc., v. Lock Haven, 288 Pa. 420, 424. See, also, Scibilia v. City of Philadelphia, 82 Pa. Superior Ct. 328, 331; Boroughs Operating Electric Plants, 5 D. & C. 754. It is plain, therefore, that the City of Reading, in undertaking to appropriate plaintiff's land for water shed or water supply purposes in pursuance of its plan for the present and future supply of the inhabitants of Reading with water, did so in its capacity of a private corporation and not as the governmental entity known as the City of Reading. The Ordinance of Dec. 28, 1927, became, if accepted by the plaintiffs, a contract between the city and the plaintiffs. The tender of the deed and possession by plaintiffs occurred on Jan. 7, 1928, four days before the passage of the repealing ordinance. Such tender by the plaintiffs amounted to an acceptance of the proposal by the city contained in the ordinance, and together the acceptance and the ordinance constituted an executory contract. It is elementary that a contract which has once been entered into cannot be avoided by the action of one of the parties without the consent of the other. It follows that the repealing ordinance was futile and void. It was an attempt to impair the obligation of the city's contract with plaintiffs for the purchase of the land.

But the defendant contends that the contract thus entered into was necessarily invalid and inoperative for the reason that there were not sufficient funds in Item PWD 72 in the city treasury on Dec. 28, 1927, to pay the contract price of $13,000 stipulated in the agreement. The ordinance directing the purchase of plaintiffs' land specified that "the purchase price be paid from Item PWD 92 in the annual appropriation to the Bureau of Water, Department of Parks and Public Property, for the fiscal year 1927." Upon the trial

the defendant called an assistant accountant in the employ of the city, who testified that on Dec. 28, 1927, there was a balance in Item PWD 92 of $90,652.63 which was encumbered by outstanding contracts charged against it to the extent of $89,791.94, thus leaving an actual balance of but $860.69. The defendant is a city of the third class, and the Act of July 15, 1919, P. L. 968, amending section 13 of article VII of the Act of June 27, 1913, P. L. 568, is as follows: "Every contract involving an appropriation of money shall designate the item of appropriation on which it is founded; and the estimated amount of the expenditure thereunder shall be charged against such item and so certified by the superintendent of finance on the contract before it shall take effect as a contract," &c. As it is clear that there were not uncharged funds in the item indicated sufficient to pay the amount of the purchase price, and as the superintendent of finance did not certify that the estimated amount of expenditure under the contract had been charged against Item PWD 92, the defendant contends that plaintiffs cannot here recover. But under the decisions we are of the opinion that this statutory provision does not apply to a contract of the character here in issue. This was not a purely executory contract; it had been executed in large part. The city had by resolution of council taken plaintiffs' land under the grant of the power of eminent domain to it by the Commonwealth and had in fact entered into possession by dumping, &c., on part of the land. Title for the purpose of erecting water-works had vested in the city at the time of the passage of the resolution appropriating the land. Accordingly, there had devolved upon the defendant the legal obligation which was present and existing of paying damages to plaintiffs, and these damages, since this was a taking of the entire property, were to be measured by the fair market value of the property at the time of taking. The statute conferring upon the defendant the power of eminent domain provides for the machinery by which the amount of damages shall be ascertained; but the statute itself provides that those means should be pursued only "in case the compensation for damages done, or the benefits accruing therefrom, have not been agreed upon:" Act of June 27, 1913, art. XIV, § 1, P. L. 568. It is clear, therefore, that the statute not only contemplates authority in the municipality to settle the question of damages by agreement, but also requires that such attempt should be made before the legal machinery designed to determine the amount of compensation should be put into motion. The city, having taken plaintiffs' property, was under obligation to pay for it. And the duly elected officers of the city, the mayor and council, agreed with plaintiffs as to the amount of that payment. It is true that they bargained for a deed giving the city title in fee simple instead of the defeasible title to be obtained by eminent domain proceedings. But it cannot be said that that was not to the best interest of the city and at the same time a settlement of the amount of the damages to which plaintiffs were entitled. Under such circumstances, the certificate of the superintendent of finance to the effect that there were sufficient funds on hand to pay the damages agreed upon was not necessary. The failure of council to make a sufficient appropriation to pay the damages can be no defense to this action. "The appellee's property has been taken by the city, and [plaintiffs are] not compelled to knock at the door of councils and ask for an appropriation:" Chelten Trust Co. v. Blankenburg, 241 Pa. 394, 398. "The provisions of the various acts of assembly forbidding payments from the funds of municipalities, in the absence of prior appropriations by their city councils, are inconsistent with the legislation regulating the ascertainment and payment of damages for land taken in the exercise of the right of eminent domain, and

it is clear that such provisions were never intended to apply to debts arising in that way:" Roudebush v. Meadville, 241 Pa. 261, 266.

As it appeared upon the trial that there were two subsisting liens against the property taken, the jury were instructed, in case they found for the plaintiffs, to find a verdict conditioned upon the delivery by the plaintiffs to defendant of a good title, free and clear of all encumbrances, and of a release for all damages claimable against the city by reason of the taking. The verdict in this form will effect justice; it will give to the plaintiffs the money agreed upon by the city and themselves, and will give to the city what it bargained for—a good and complete title in fee simple and a release of all other claims.

And now, to wit, March 17, 1930, the rules for a new trial and for judgment n. o. v. are both discharged.

From Charles K. Derr, Reading, Pa.