Metropolitan Hospital on Behalf of Themselves and All Others Similarly Situated, Plaintiff, *v.* Commonwealth of Pennsylvania, Department of Public Welfare and Don Jose Stovall, Director of Public Welfare, Defendants.

118

Argued June 3, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Pace Reich,* with him *Judith Eichen,* and *Modell, Pincus, Hahn & Reich,* for plaintiffs.

*Norman J. Watkins,* Deputy Attorney General, with him *Lawrence Silver,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for defendants.

OPINION BY JUDGE CRUMLISH, JR., August 26, 1975:

Metropolitan Hospital, on behalf of itself and all others similarly situated (Plaintiff) instituted a three count complaint in equity challenging the establishment and operation of the Utilization Review Committee (Committee) of the Department of Public Welfare (Defendant). This Committee, required by federal law,[1] has as

---

1. See 42 U.S.C. §1396A(a) 30:

"(a)    A State plan for medical assistance must

"(30) provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments (in-

its purpose the monitoring of Medicare and Medicaid disbursements to providers of inpatient hospital care and attempts to insure that only reasonable costs of *medically necessary* medical procedures are subsidized with state and federal funds.

Plaintiff alleges that: 1) the establishment of the Committee and its operation violates its existing contract with Defendant; 2) failure to promulgate rules, regulations and standards by Defendant makes Plaintiff's compliance impossible, and thus, deprives Plaintiff of property without due process of law; and 3) failure to provide Plaintiff further review for a period in excess of one year is violative of the parties' contract and the Constitutions of both the United States and of this Commonwealth. Plaintiff now prays that this Court compel Defendant to retroactively restore *all* disallowed payments.[2]

Defendants have lodged preliminary objections to the complaint in equity. They are:

1. This Court lacks equity jurisdiction over the cause in that Plaintiffs have not exhausted adequate and available statutorily imposed administrative remedies.

2. The cause of action is not properly maintainable as a class action.

We must decide the validity of these objections.

Initially, we will examine the exhaustion of statutory remedies objection. Key to this inquiry is Section 9421.54 of the Department of Public Welfare Medical Assistance Manual which provides:

cluding payments for any drugs provided under the plan) are not in excess of reasonable charges consistent with efficiency, economy, and quality of care; . . . ."

In order to clarify this general language, the Department of Health, Education and Welfare promulgated regulations found in 45 C.F.R. 250.20.

2. In reality, we are here dealing with an amendment complaint and preliminary objection reinstated in response thereto.

"The Department's decision to deny payment or to seek reimbursement of payment for services from the hospital or to bar the hospital from participation may be appealed upon request of the hospital administrator to the Department. (Administrative Agency Law 1945, June 4, P.L. 1388.)

"The request for the appeal must be initiated within 30 days from the date of the Department's disapproval letter; it is sent to the Director of the Division of Utilization Review, Bureau of Medical Assistance, P.O. Box 2675, Harrisburg, Pennsylvania 17120.

"In such an event, an informal pre-hearing conference is first held with the Department's Office of Legal Counsel. If the hospital and Department do not agree at this preliminary conference, a hearing examiner is then appointed by the Department and a formal, administrative hearing is scheduled.

"Pending decision on the appeal, MA payments to the hospital for such cases will be withheld; further adjustments on a case that has been paid and adjusted previously will not be made until such time as the case is adjudicated."

We understand this administrative procedure to mean that the fiscal intermediary submits every claim for payment to the Committee, whereupon the hospital is given a notice of each disallowed claim. If the hospital submits a timely request for appeal, a prehearing conference is convened. Following this conference, if no agreement has been reached concerning payment of the disallowed claim, a formal departmental hearing is held and an adjudication entered from which appeal may be taken to our Court within thirty days.

Defendant, as proponent of the objection, asserts that the instant case is much the same as *Lillian v Commonwealth of Pennsylvania,* 11 Pa. Commonwealth Ct. 90, 311 A.2d 368 (1973), wherein we followed our Supreme Court's decision in *Rochester & Pittsburgh Coal Co. v.*

*Indiana Board of Assessment & Revision of Taxes,* 438
Pa. 506, 266 A.2d 78 (1970). In *Lillian,* we enunciated
the standard to be applied prior to proceeding in equity
for actions involving *taxing authorities.* " 'In a positive
sense, what is required to confer jurisdiction on an equity
court is the existence of a substantial question of con-
stitutionality (and not a mere allegation) *and* the absence
of an adequate statutory remedy.' " (Emphasis in origi-
nal.) *Lillian, supra,* at 92, 311 A.2d at 369.

It is readily apparent that the standard to gain
entrance into equity in a taxing matter is a much stricter
one than would be applied in other areas. A review of
the case law cited in, and leading to *Rochester,* clearly
shows that this more difficult standard, where a sub-
stantial constitutional claim must be present, is the result
of the historical uniqueness of the tax area of the law.
Precise legal procedures have always been established
where a taxing statute was in effect and the administra-
tive bodies administering these statutes developed vast
expertise with respect to these procedures. Therefore, the
need for equity was, indeed, a limited one, and thus the
enunciation of a rule making access to it difficult.

Our research informs us that this strict standard is
not applied in all administrative cases where equity is
called upon. To the contrary, tax cases are the sole area
in which the litigant must show *both* a substantial con-
stitutional question and an inadequate remedy at law. The
question before us, therefore, is solely one of the adequacy
of the statutory remedy.

Plaintiff contends in its brief that during the two and
one-half years preceding this action, it has filed more than
800 appeals pursuant to Section 9421.54 and that during
this time only *one informal hearing* was scheduled at
which 13 to 15 appeals were reviewed. It is advanced that
such a delay effectively emasculates any semblance of
effectiveness which this statutory remedy would seem
to provide.

Such a contention in proper context may well be a valid one, for clearly, the remedy and its exercise have not been pressed diligently by Defendant. But, are we presently in a position to accept Plaintiff's argument? For purposes of preliminary objections, we must treat as true all well and clearly pleaded facts. *Commonwealth ex rel. Powell v. Aytch,* 10 Pa. Commonwealth Ct. 218, 309 A.2d 734 (1973). Reviewing Plaintiff's complaint, we find neither an averment that there is no adequate remedy at law, nor a specific averment relating to the 800 appeals pressed by Plaintiff. However, averments numbers eleven and sixteen, although not expressing the lack of hearings in exact numbers, do complain that hearings on these claims were denied.[3] The complaint also avers that the lack of specific guidelines and rules makes compliance with the program impossible. This, too, goes to the inadequacy of the statutory remedy. A total review of the complaint leads us to conclude, notwithstanding Defendant's protestations, that Plaintiff has properly pleaded a cause in equity, and accepting as true its averments, has shown the ineffectiveness of the provided statutory remedy. As such, we find no merit to the contention that Plaintiff cannot proceed in equity before exhausting its legal remedies, for it is axiomatic that a party litigant need not pursue to exhaustion ineffective legal remedies.

Defendant next asserts that this action is not properly maintained as a class action. Paragraphs five and sixteen of Plaintiff's amended complaint state:

"5. Plaintiff brings this action on behalf of themselves and the Class consisting of all other hospitals in the Commonwealth of Pennsylvania who entered into the

---

3. "11. That based on the decision of the aforementioned Utilization Review Committee, defendants retroactively disallowed claims for payment submitted by plaintiff under the Public Welfare Code that were previously allowed and paid and long after the patient had been discharged from the hospital."

See paragraph sixteen *infra* in this opinion.

aforementioned standard contract, . . . with the DEPARTMENT OF PUBLIC WELFARE to provide inpatient hospital care for eligible persons in accordance with the Public Welfare Code, Act 21 of June 13, 1967, P.L. 31, Article IV from the period January, 1971 to the present.

"16. Plaintiff brings this action on behalf of themselves and the Class consisting of all other hospitals in the Commonwealth of Pennsylvania who entered into the aforementioned standard contract, . . . with the DEPARTMENT OF PUBLIC WELFARE to provide in-patient hospital care for eligible persons in accordance with the Public Welfare Code, Act 21 of June 13, 1967, P.L. 31, Article IV from the period January, 1971 to the present, and who, after having received notice of denial of claims by the DEPARTMENT OF PUBLIC WELFARE requested administrative review of such denial and a hearing in connection therewith, which hearings have never been held."

Plaintiff further avers that 1) the potential class contains approximately 260 members; 2) potential class members have entered into the *same* contract (In Patient Hospital Care Agreement); 3) Defendant has applied the same review procedure to each class member; 4) Defendant has used the same notices of claim denial for each class member; and 5) Defendant has unreasonably delayed each class member in review of claim disallowances.

Pa. R.C.P. 2230 (a) states:

"If persons constituing a class are *so numerous as to make it impracticable to join all as parties,* any one or more of them who *will adequately represent the interest of all* may sue or be sued on behalf of all, but the judgment entered in such action shall not impose personal liability upon anyone not a party thereto." (Emphasis added.)

There is a great deal of case law interpreting Fed. R. Civ. P. 23[4] (the federal rule providing for maintenance of class actions), but Pennsylvania courts have had little opportunity to give meaning to Rule 2230(a). The most recent expression of the law of class actions in Pennsylvania surfaced in our Supreme Court's decision in *McMonagle v. Allstate Insurance Company*,         Pa.     , 331 A. 2d 467 (1975),[5] where the following principles were enunciated:

1—Rule 2230 does not encompass the notion of the so-called true, hybrid and spurious class actions found in the original Federal Rule 23.

2—Pennsylvania courts are not bound by cases decided under the federal rule, although such cases may be followed if persuasive.

3—The class representative must be a member of the class he or she seeks to represent.

But, there are other appellate decisions casting light on the proper guidelines in determining the propriety of the class. In *Buchanan v. Brentwood Federal Savings and Loan*,         Pa.     , 320 A. 2d 117 (1974), the Supreme Court, in remanding to the lower court, suggested these criteria as to similarity of class members:

4.   The class members must be so numerous as to make it impracticable to join all as parties.

5.   The representative must adequately represent the interest of all class members.

To date, these are the only general substantive con-

---

4.   Delle Donne & Van Horn, Pennsylvania Class Actions: the Future in Light of Recent Restrictions on Federal Access?, 78 Dick. L. Rev. 460, 466-96 (1974). This article exhaustively reviews both federal and Pennsylvania class action law.

5.   For a complete review of the relatively few Pennsylvania decisions in the area, see *McMonagle, supra,* at ..., 331 A. 2d at 468-69 n. 2.

straints laid upon Rule 2230 by our Supreme Court.[6] Perhaps Judge SPAETH'S dissenting language in *McMonagle,* when that case was before the Superior Court, which language was adopted by the Supreme Court, explains the lack of precise standards for the rule. "We are not bound by [the criteria that have in the past been applied by the federal courts]. *Our rule is more general and thus less restrictive than the Federal rule . . .* The experience with class actions in the Federal courts has been difficult. Hopefully, we may benefit from it, and do better." (Emphasis added.) *McMonagle, supra,* at ——, 331 A. 2d at 471.

Defendant asserts that there should be a tripartite test for Rule 2230, to wit, 1) necessity for *numerosity* (which is included in the Rule and the caselaw); 2)

---

6. Other decisions have enunciated similar principles and various procedural and pleading prerequisites have been formulated. *See e.g., Korona v. Township of Bensalem,* 5 Bucks Co. L. Rep. 142 (Pa. C.P. 1955), *rev'd on other grounds,* 385 Pa. 283, 122 A. 2d 688 (1956) and *Crane v. Liquor Control Board,* 50 Dauph. Co. Rep. 401 (Pa. C.P. 1941) where courts did not require class members to give formal authorization to their representatives, and representatives do not appear to be compelled to give notice to the class members absent such an order issued in the court's discretion. *Jones v. Zimmerman,* 11 Leb. C.L.J. 391 (Pa. C.P. 1967).

Further, it has been held that the representative have no interest adverse to the class, *Penn Galvanizing v. Philadelphia,* 388 Pa. 370, 130 A. 2d 511 (1957) and that the relief sought be beneficial to the class. *Charles v. Crestview Properties, Inc.,* 15 D & C 2nd 568 (C.P. Dauph. 1957).

Exceptions have been carved out of Rule 2230 such as suits by or against a union, trade association or other unincorporated association cannot be brought within the scope of this Rule, rather these actions must proceed pursuant to the Unincorporated Associations as Parties Rules. *Montgomery Township Citizens Ass'n v. Montgomery Township School District,* 3 Adams Co. L. J. 15 (Pa. C. P. 1961); Rules Committee Note to Pa. R. Civ. P. 2230.

Pleading constraints have been established to some degree although uniformity in their application is far from a reality. In

necessity for *common questions of law and fact* between class members (which is a requirement under the Federal Rule), and 3) a *commonality of interest* between the representative and members of the class as to insure *adequate* representation (which is a consolidation of two expressions recited by the Supreme Court and the express language of the Rule). Of these, the first and the third do bear of the Pennsylvania Rule, but the second, common question of law and fact, is a uniquely federal requirement, and we can find no sound reason for imposing such a requirement on Rule 2230. With these considerations in mind, we turn to the instant case.

Defendant, in support of its objection, first argues that the numerosity requirement has not been met by an averment that "more than 260" are the number in the class. Defendant admits there can be no hard, fast rule with respect to numerosity but cites to us *Minersville Coal Co. v. Anthracite Export Ass'n*, 55 F.R.D. 426 (M.D.Pa. 1971) for the proposition that at least one federal district considers 330 plaintiffs not so numerous that joinder of all members is impracticable. We cannot

---

*Wilson v. Blaine*, 262 Pa. 367, 105 A. 555 (1918) and *Crane v. Liquor Control Board, supra*, it was held that the Plaintiff representative must plead his representation. The party may caption the complaint "Class Action" but this does not appear to be a necessity. *Penn Galvanizing v. Philadelphia, supra; Herrera v. Burke*, 50 Pa. D & C 2d 73 (Del. C. P. 1970). Although the pleading requirements appear minimal, it should be noted that our Supreme Court in *Penn Galvanizing* stated that the minimal requirements are not merely formalistic and absent these minimal averments, etc. a class action will not be inferred. *See Penn Galvanizing, supra*, 388 Pa. at 376, 130 A. 2d at 515.

While there appears to be a disparate variety of views on the factual averments necessary to support blanket representation, it would seem that these factual averments, as in the instant case, should go to the numerosity, commonality of interest and adequacy of representation substantive prerequisites.

For a complete review of other decisions in the area, *see* Delle Donne and Van Horn, *supra*.

accept a pure citation of numbers in such a determination, and as our Courts have said, federal decisions can be persuasive, but are in no way dispositive. To us, the approximation of 260 hospitals as Plaintiff in this class action, where claim is made for funds disallowed by Defendant, presents a sufficiently grave imposition on court resources, and an unnecessary drain on disparate private litigants' energies, to justify our saying that this proposed class is sufficiently numerous.[7]

Next, we must determine whether this Plaintiff has a sufficient commonality of interest to justify a conclusion of adequacy of representation of remaining potential class members.[8] The commonality of interest making Plaintiff a proper representative asserted by Plaintiff is that all class members enjoy similar contractual arrangements with Defendant and that all are subject to the same claim review procedure, that all are notified similarly of disallowance of claims, and all have been unreasonably delayed in the processing of reimbursement claims. Defendant counters by arguing that each potential Plaintiff, of necessity, will have different and individual questions and issues upon which a court must rule. Plaintiff has asked the Court to order Defendants to pay for *all* disallowed claims for inpatient hospital services from January 1971 upon the assertion that due process has been denied in the process of the claims. Assuming arguendo, that we would at some future date reach those merits and

7. A purely numerical indication that other federal districts consider far less than 330 Plaintiffs impracticable for joinder purposes can be found in *Carpenter v. Davis*, 424 F. 2d 257 (5th Circ. 1970) (20-30 Plaintiffs); *Landsdale v. Tyler Junior College*, 318 F. Supp. 529 (E.D. Tex. 1970) (40 Plaintiffs); *Bowe v. Colgate Palmolive Company*, 272 F. Supp. 332 (S.D. Ind. 1967) (160 Plaintiffs).

8. *See, e.g., McMonagle, supra; Buchanan, supra;* and the federal decision of *Mersay v. First Republic Corporation of America*, 43 F.R.D. 465 (S.D. N.Y. 1968).

find that this named Plaintiff had been denied due process in the claim procedure, the unanswered question would be whether "all others," asserted to be similarly situated, were denied payment *on similar grounds*. The inquiry of whether federal and state requirements of *medical necessity* could, and most probably would be different for each claim of each class member. This, in itself, is sufficient to sustain Defendant's preliminary objection to the class action posture of this case.

## ORDER

AND NOW, this 26th day of August, 1975, the preliminary objection of defendant with respect to the propriety of Plaintiff's class action is hereby sustained and the cause in equity is dismissed without prejudice. Leave is granted Plaintiff to pursue the action individually. Defendant's preliminary objection with respect to the exhaustion of statutory remedies is dismissed.

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent. The majority opinion accurately and assiduously sets forth the applicable law, and, therefore, I adopt that entire opinion, except for the last three sentences. My review of this record leads me to conclude that the complaint properly sets forth a justiciable class action.

I would overrule the preliminary objections, permit the defendants to file an answer and, thereafter, allow the parties to proceed to trial. This would not only resolve a morass of bureaucratic dilatoriness, thereby benefiting the hospitals, their indigent patients and the Department of Public Welfare, but also would alleviate a multiplicity of lawsuits.