Vincent Tulio and T-T Stable, Owner of "Two Lines", Petitioners *v.* Commonwealth of Pennsylvania, State Horse Racing Commission et al., Respondents.

Argued September 14, 1983, before Judges WIL-
LIAMS, JR., DOYLE and BARBIERI, sitting as a panel of
three.

*John L. Heaton*, with him *Thomas J. Bender, Jr.,
Dilworth, Paxson, Kalish & Kauffman*, for petition-
ers.

*Michael L. Harvey,* Deputy Attorney General, with him *Allen C. Warshaw,* Deputy Attorney General, Chief of Special Litigation, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY JUDGE BARBIERI, January 3, 1984:

Presently before this Court are preliminary objections raised by the respondents in this action to that part of a petition for review filed by the petitioner addressed to this Court's original jurisdiction wherein the petitioner seeks injunctive relief and money damages under Section 1 of the Civil Rights Act of 1871, 42 U.S.C. §1983.

On December 23, 1981, the state veterinarian at the Keystone Race track placed the petitioner's horse "Two Lines" on the "Veterinarian List" after the horse exhibited abnormal activity following its entry in the sixth race that day. Thereafter, the petitioner attempted to have the horse removed from the list, but was informed by the state veterinarian that the State Horse Racing Commission (Commission) had decided that his horse should remain on the list. A horse placed on the veterinarian list in Pennsylvania cannot race until the horse is once again proven physically sound. *See* 58 Pa. Code §163.453.

Upon the petitioner's request, a hearing was scheduled before the Commission which was conducted on November 23, 1982. By a decision and order dated January 24, 1983, the Commission denied the petitioner's request to remove "Two Lines" from the veterinarian list. On February 18, 1983, the petitioner filed with this Court a petition for review addressed to both this Court's appellate and original jurisdictions wherein he has named as the respondent parties, the Commonwealth of Pennsylvania, the State Horse Racing Commission, and Commissioner Joan F. Pew, a

member of the Commission. The respondents have filed preliminary objections to that part of the petition for review addressed to this Court's original jurisdiction in which the petitioner has requested injunctive relief from the Commission's order, and money damages pursuant to Section 1983. The respondents request that the petitioner's original jurisdiction petition for review be dismissed since (1) the petitioner has a full, complete, and adequate remedy at law in this Court's appellate jurisdiction, (2) that the doctrine of sovereign immunity bars the petitioner's claim for money damages against the Commonwealth and the State Horse Racing Commission, and (3) that the petitioner's claim against Commissioner Joan F. Pew is barred under the doctrine of judicial immunity.[1]

In addressing the first of the respondents' preliminary objections, we note that in this Commonwealth it is well established that a court of equity lacks jurisdiction to entertain a cause of action for which there exists a full, complete and adequate remedy at law. *St. Joe Minerals Corporation v. Goddard,* 14 Pa. Commonwealth Ct. 624, 324 A.2d 800 (1974) (citing cases). This is particularly true where the remedy at law is set forth in a statute relating to the subject matter of the case. *Rankin v. Chester-Upland School District,* 11 Pa. Commonwealth Ct. 232, 312 A.2d 605 (1973). In determining whether there exists an adequate remedy at law precluding the petitioner from seeking equitable relief, we must first look at the basis for the peti-

---

[1] Although the issue of immunity from suit should be raised by the respondents in a responsive pleading under the heading of "New Matter," Pa. R.C.P. No. 1030, followed by a motion for judgment on the pleadings, Pa. R.C.P. No. 1034, we will address the immunity issues raised here because the plaintiff has not objected to them being raised by preliminary objection. *See Picariello v. Commonwealth,* 54 Pa. Commonwealth Ct. 252, 421 A.2d 477 (1980).

tioner's petition for review addressed to our original jurisdiction, and determine if under the circumstances alleged there exists a remedy at law, and if so, whether that remedy is adequate and complete.

In the petitioner's petition for review to this Court's original jurisdiction, he has alleged in general that the Commission's decision and order of January 24, 1983, was based upon facts not a part of the record which he learned at or after the Commission's hearing. In particular, the petitioner has advanced numerous allegations regarding Commissioner Pew's involvement in the actual investigation of the horse "Two Lines", as far back as the December 23, 1981, incident, in which the petitioner contends that Commissioner Pew actually orchestrated the gathering of information about the case, had made a decision on the merits of the case long before the Commission's hearing, and despite her extensive involvement in the case, presided over the hearing which was to determine whether the Commission acted properly in keeping "Two Lines" on the veterinarian list and consequently from racing.[2] Since it is not our purpose in

---

[2] The pertinent factual allegations in the petitioner's petition for review are as follows:

12. Despite the fact that petitioner successfully completed all the requirements originally established by Dr. Oppenlander for the horse to be proven physically sound, Dr. Oppenlander then refused to approve the horse for racing, but instead informed petitioner that the decision as to whether the horse was physically sound was up to Commissioner Pew.

13. On January 25, 1982, Commission Pew wrote to Dr. Oppenlander advising him of the Commissioner's decision that "Two Lines" should remain on the veterinarian's list in Pennsylvania. . . .

14. Prior to the decision of January 25, 1982, the Commission, and Commissioner Pew, were in receipt of Two Lines' "case history" which had been obtained through use

the present proceeding to pass upon the veracity of the petitioner's allegations, we will for the purpose of deciding whether or not the respondents' preliminary objections be sustained, assume that the facts as pleaded by the petitioner are true. *See Metropolitan*

of a subpoena. Petitioner has never been given an opportunity to review the said "case history" and it was not introduced at the hearing in this matter.

15. In addition to reviewing "Two Lines" case history, the Commission and Commissioner Pew, conferred with an unspecified number of veterinarians to solicit their opinion as to whether a horse with such a "case history" was safe for racing. Petitioner had no knowledge of these discussions.

16. Commissioner Pew solicited an opinion from Dr. William Moyer of the University of Pennsylvania, relative to the safety of continuing to race "Two Lines". Information upon which that opinion was to be based was supplied by Commissioner Pew. Dr. Moyer wrote to the Commission stating his opinion on January 25, 1982, the same day that Commissioner Pew sent out the Commission's decision.

. . .

17. Commissioner Pew also solicited the visual observation of Dr. J. Forrest Peacock relative to Two Lines' behavior on December 23, 1981. Dr. Peacock responded to Commissioner Pew by letter dated January 28, 1982, three days after Commissioner Pew sent out the Commission's decision. . . .

18. Despite the fact that she had taken a personal interest in the case almost from its inception; had ordered the state veterinarian to defer to her judgment as to whether "Two Lines" should remain on the veterinarian's list; had subpoenaed and reviewed the horse's "case history"; had discussed the said case history with a number of veterinarians; had solicited their opinions on the matter; and had actually made the decision that the horse should remain on the veterinarian's list, Commissioner Pew did *not* disqualify herself from hearing and deciding the case when petitioner requested a hearing on that decision.

19. To the contrary, she *presided*, along with the Commission's hearing examiner, when the case came before the Commission for a hearing on October 18, 1982.

*Hospital v. Department of Public Welfare,* 21 Pa. Commonwealth Ct. 116, 343 A.2d 695 (1975).

Basically, the petitioner is alleging that his right to due process of law has been violated by the alleged actions of the Commission in the adjudication of his case. Certainly, the question of whether a person's constitutional rights have been violated can be addressed by this Court on appeal. *See* Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; 58 Pa. Code §165.185(a). The petitioner contends however, that meaningful review in this Court's appellate jurisdiction is impossible since the Commission's adjudication is based upon facts not made a part of the record. While this point is well taken, we do not believe that in this particular case, the petitioner's remedy at law is rendered inadequate. On appeal, if it appears to this Court that the basis for the petitioner's contentions are not a part of the record, and it appears that the petitioner could not by the exercise of due diligence have raised his due process contention before the Commission, *see* Pa. R.A.P. 1551, this Court may always remand the case back to the Commission with directions that it conduct a hearing regarding the petitioner's allegations and, if necessary, order that Commissioner Pew be disqualified from the hear-

---

20. Commissioner Pew, however, only presided over the October 18, 1982 session of the hearing during which the Commonwealth presented its case against "Two Lines". She did not preside and was not present at the November 23, 1982 session when petitioner offered testimony of the horse's fitness for racing.

21. Despite all the facts mentioned in paragraph 18 above, Commissioner Pew also participated in the decision of the case and signed the adjudication of the Commission. (Emphasis in original.)

It should be noted that the Commission's decision referred to in paragraph 13 above is not the adjudication about which the petitioner now complains.

ing[3] since it would be clearly impermissible for her to sit as a judge in proceedings in which she is the subject of the actions complained of. *Tuney v. Ohio,* 273 U.S. 510 (1927).

It is also the conclusion of this Court that insofar as the petitioner's petition for review seeks damages against the Commonwealth of Pennsylvania and the State Horse Racing Commission, the petitioner's complaint must be dismissed and the respondents' preliminary objections sustained. Our General Assembly, pursuant to Section 11 of Article 1 of the Constitution of Pennsylvania, has declared that the Commonwealth[4] shall enjoy sovereign immunity from suit, *see* 1 Pa. C. S. §2310, except in those situations, none of which apply to the present case, where sovereign immunity has been specifically waived. *See* Section 8522 of the Judicial Code, 42 Pa. C. S. §8522.[5]

The respondents' last preliminary objection requests this Court to dismiss the petitioner's petition for review seeking money damages against Commis-

---

[3] Section 706 of the Judicial Code, 42 Pa. C. S. §706, states that:

> An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or *require such further poceedings to be had as may be just under the circumstances.* (Emphasis added.)

[4] The State Horse Racing Commission was established as a department with the Pennsylvania Department of Agriculture, *see* Section 201 of the Horse Racing Industry Reform Act, Act of December 17, 1981, P.L. 435, *as amended,* 4 P.S. §325.201, and is therefore considered a commonwealth agency for purposes of that portion of the Judicial Code pertaining to sovereign immunity. *See* Section 8501 of the Judicial Code, 42 Pa. C. S. §8501.

[5] In *Kapil v. Association of Pennsylvania State College and University Facilities,* 68 Pa. Commonwealth Ct. 287, 448 A.2d 717 (1982), this Court recognized the United States Supreme Court's pronouncement in *Quern v. Jordan,* 440 U.S. 332 (1979), that Congress in enacting Section 1983 did not intend to override the traditional immunity of the states.

sioner Pew under Section 1983 upon the basis of quasi-judicial immunity. In *Petition of Dwyer,* 486 Pa. 585, 406 A.2d 1355 (1979), our Supreme Court, following the lead established by the United States Supreme Court in *Butz v. Economou,* 438 U.S. 478 (1978), extended the principle of quasi-judicial immunity to agency officials performing adjudicatory functions within an administrative agency. This ruling was adopted in part, upon the belief that adjudications within an administrative agency share enough of the characteristics of the judicial process (*e.g.,* issuing subpoenas, ruling on evidence, regulating hearings, and making or recommending decisions), that those who participate in them should be absolutely immune from suit for damages. An important element which must be established before this immunity can apply, however, is whether or not the actions complained of were performed within the quasi-judicial function. If not, then quasi-judicial immunity cannot apply. *Id.* In the present action, we are certain that Commissioner Pew, when acting in her adjudicatory capacity, enjoys quasi-judicial immunity since her functions in that capacity substantially parallel those functions which were the basis for the quasi-judicial immunity granted in *Butz* and *Dwyer, See* Section 201 of the Horse Racing Industry Reform Act, Act of December 17, 1981, P.L. 435, *as amended,* 4 P.S. §325.201; 58 Pa. Code §165.183(a), (c). While the respondents allege in their brief that the petitioner's suit is based only upon Commissioner Pew's failure to recuse herself, an action which we believe falls within her adjudicatory capacity and for which quasi-judicial immunity would apply, our review of the petitioner's allegations, as discussed earlier, reveals that many of the actions complained of fall outside the adjudicatory function.[6]

---

[6] While a factual inquiry is sometimes necessary to determine in what role the challenged actions were performed, *see Mancini v. Lester,* 630 F.2d 990 (3rd. Cir. 1980) ; *Forsyth v. Kleindienst,* 599

314

We cannot say then that the doctrine of quasi-judicial immunity can protect Commissioner Pew from damages arising out of these actions.[7] The respondents' preliminary objection regarding quasi-judicial immunity, therefore, is sustained only insofar as it relates to Commissioner Pew's failure to recuse herself from the Commission's adjudication, and denied in all other respects.

### ORDER

AND Now, this 3rd day of January, 1984, the preliminary objections of the respondents in the above captioned matter are sustained insofar as the petitioner's petition for review (1) requests injunctive relief, (2) states a cause of action against the Commonwealth of Pennsylvania and the State Horse Racing Commission, and (3) seeks money damages against Commissioner Joan F. Pew for actions within her adjudicatory capacity, and are denied insofar as they seek to dismiss the petitioner's petition for review against Commissioner Pew for those actions complained of outside her adjudicatory functions.

---

F.2d 1203 (3rd. Cir. 1979), we do not believe such an inquiry is necessary here for the purposes of deciding the respondents' quasi-judicial immunity question.

[7] Whether or not Commissioner Pew enjoys some other kind of immunity for actions performed in a purely investigatory or administrative function, is not a question we now decide, nor is it one raised by the parties. *See Dubree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978).