## McCaffery v. Creamer, Jr.

*Dion Rassias,* for plaintiff.

*Karen Daly, Cheryl Krause, Elisa Wiygul,* for defendant.

BERNSTEIN, *J.,* April 4, 2012—Before the court is the motion for summary judgment of J. Shane Creamer, Jr. and the city of Philadelphia board of ethics. Defendants have filed a motion for summary judgment even though depositions have yet to occur.

Plaintiff filed suit claiming defendant J. Shane Creamer, Jr. and the city of Philadelphia board of ethics "sandbagged" plaintiff Daniel D. McCaffery by releasing to the press knowingly false allegations contained in a precipitously filed "enforcement" action. Plaintiff further contends defendants intentionally decided to do so just prior to a primary election at which Mr. McCaffery was a candidate for the office of District Attorney of the County of Philadelphia specifically to harm his chances of election.

Preliminary objections were initially sustained on a theory of quasi judicial immunity. After preliminary objections were sustained, the Commonwealth court in a well reasoned opinion reversed the trial court, holding that the improper release of defamatory material just prior to an election can be actionable. The Commonwealth court accurately and succinctly summarized the factual allegations as follows:

"McCaffery was a candidate for the office of district attorney for the City and County of Philadelphia. Pursuant to all applicable rules and regulations, McCaffery established "McCaffery for district attorney" as the designated committee for his campaign for district attorney. McCaffery for district attorney, through its Treasurer Joseph Fernandes, esquire, spent funds, and otherwise took all steps necessary to act in a manner fully consistent with all applicable laws and regulations governing the establishment of a committee, and acting as an independent entity.

The Pennsylvania good government fund (fund) is a duly registered political action committee affiliated with McCaffery's private law firm and registered at 101 Greenwood Avenue, 5th Floor, Jenkintown, Montgomery County, Pennsylvania. On or about April 17, 2009, Creamer and the board issued a subpoena directed to the fund demanding that various documents and information be produced. Creamer and the board directed this subpoena and served it upon a private residence at 312 Palmer Drive, Philadelphia, Pennsylvania. At all times relevant hereto, the registered address for the Fund was 101 Greenwood Avenue, 5th Floor, Jenkintown, Montgomery County, Pennsylvania.

When McCaffery learned of the invalidly served subpoena, he contacted Creamer and asked about the nature of the board's inquiry and why the subpoena was served upon a Philadelphia residence rather than through the proper legal channels. In response, Creamer threatened McCaffery by stating that if he did

not receive documents in response to the subpoena, he would file an enforcement action and convene a press conference telling "everyone who would listen" that McCaffery was deliberately obstructing justice, hiding his financials from public scrutiny and refusing to comply with a Board investigation of his campaign and law firm's political action committee.

Due to the time and expense it would require to challenge the subpoena, and in light of Creamer's threats to convene a press conference, McCaffery directed the fund to simply turn over all of the requested documents. In response, Creamer and the board accused McCaffery and the McCaffery for district attorney committee of intentionally violating campaign finance laws and misleading the public by misallocating certain campaign contributions in 2009 that should have been allocated to 2008. However, there was no hiding of funds, rather an administrative allocation of $3,100 to calendar year 2008 and the remaining $7,400 from a check in the amount of $10,500 to calendar year 2009. The allocation was made to comply with the Philadelphia campaign finance laws.

After reviewing the books and records of the McCaffery for district attorney committee and the hundreds of thousands of dollars that were raised by the committee, the board could only find an open allocation of $3,100. The allocation was consistent with federal election laws which allow a contributor to allocate monies from a single check over two calendar years so as to comply with calendar year limits on campaign contributions.

Upon discovery of the allocation, Creamer and the board informed the McCaffery for district attorney committee that notwithstanding the fact that local election laws are silent on allowable allocations, Creamer and the board perceived the allocation as a violation of campaign finance laws. As a result, on the eve of the 2009 Primary Election, Creamer and the board offered to allow McCaffery and his campaign to admit to knowing violations of the laws, pay a fine and repay the monies allocated from the campaign committee to the fund.

McCaffery rejected the offer knowing that no one committed any intentional violation of the campaign finance laws. The Board responded by filing an enforcement action with the trial court alleging that McCaffery: (1) deliberately violated the campaign finance laws; (2) attempted to hide campaign contributions from the public; (3) concocted a "scheme" to hide contributions from the public; and (4) deliberately misreported the $3,100 campaign contribution. Simultaneously with filing the enforcement action, on the eve of the 2009 primary election, Creamer held an extra-judicial press conference, not pertinent in any way to the enforcement action against McCaffery or his committee, where Creamer publicly accused McCaffery of criminal and civil misconduct, attempting to circumvent the campaign finance laws, and knowingly conspiring to hide the truth from the public.

As a result of the filing of the enforcement action, the McCaffery campaign ultimately paid a $750 fine for

the allocation of the $3,100 to calendar year 2008. As part of the settlement agreement, which was reached long after the 2009 primary election, Creamer and the Board admitted that neither the McCaffery for district attorney Committee, McCaffery individually or the committee treasurer intentionally or deliberately violated any of the campaign financial disclosure or conflict of interest laws. This admission by Creamer and the board is in sharp contrast to the enforcement petition and the press conference statements made before the 2009 primary election. At all times relevant hereto, Creamer and the board knew despite the press conference and filings, that McCaffery did nothing wrong intentionally, never intended to hide any of his campaign contributions from the public and never sought to violate the public trust.

Based on the facts set forth in the complaint, McCaffery alleges that Creamer, as executive director of the board, was authorized to recommend and take all actions on behalf of the board against McCaffery and his committee and was required to do so in a lawful, unbiased, even-handed and fair manner. McCaffery alleges that Creamer and the board failed to do so, and instead made frivolous, misleading and false statements about McCaffery and his campaign which were known to Creamer and the board to be false and/or reckless. McCaffery further alleges that Creamer and the board undertook this deliberate, rogue and reckless course of conduct in an effort to sabotage McCaffery's campaign, to embarrass McCaffery and to tarnish his name and reputation in the eyes of the voting public. Therefore,

McCaffery demands, inter alia, compensatory damages, interest, costs, attorney's fees, and an award of punitive damages."

The commonwealth Court overruled the lower court ruling granting preliminary objections, reinstated the complaint and reaffirmed long standing precedent that quasi judicial immunity was only applicable when the agency and its employees properly conduct themselves. The court acknowledged that Pennsylvania State law has extended quasi-judicial immunity to the administrative agency process:

> In *petition of Dwyer*, 486 Pa. 585, 406 A.2d 1355 (1979), our Supreme Court following the lead established by the United States Supreme Court in *Butz v. Economou,* 438 U.S. 478, (1978), extended the principle of quasi-judicial immunity to agency officials performing adjudicatory functions within an administrative agency."[1]

Agencies and agency officials enjoy quasi-judicial immunity because adjudications within an administrative agency share enough of the characteristics of the judicial process like issuing subpoenas, ruling on evidence, regulating hearings and making or recommending decisions, that those who participate in them should be immune from suit for damages. However, this immunity is not absolute. For immunity to apply it must be established that the actions complained of were performed within the agency's quasi-judicial function.[2] Immunity afforded to

---

1. *Tulio v. Com., State Horse Racing Com'r*, 79 Pa. Comwlth., 305, 313,470 A.2d 645, 648-49 (1984).
2. *Id.*

official acts is inapplicable to unofficial conduct or ultra vires activities.

The Commonwealth Court correctly summarized the law of Pennsylvania concerning the limited immunity afforded to administrative agencies as applied to this case. The Commonwealth Court said:

"...McCaffery argues that Creamer and the Board are not entitled to immunity for actions apart from filed litigation or administrative hearings. McCaffery contends that his complaint raises factual issues regarding whether Creamer and the board acted outside the normal course and scope of the employment..."

"McCaffery contends that Creamer and the board publicly disclosed their filing against him in violation of Section 20-606(i) of the Philadelphia code."

Section 3-806 of the Philadelphia home rule charter establishes a 5 appointed member board of ethics, provides for the appointment of an executive director, and sets forth that the board shall meet at least quarterly and at such other times as the chair may deem necessary.[3] Section 4-1100 of the home rule charter sets forth the powers of that board of ethics. These powers include the power to: (1) conduct investigations and convene hearings;

---

3. Section 3-806(a) of the Philadelphia home rule charter specifically provides as follows: (a) Composition. There shall be a board of ethics consisting of five members appointed by the mayor with the advice and consent of a majority of the members of city council. Members shall be chosen for their independence, integrity, civic commitment and high ethical standards; they shall be residents of, or have their primary place of business in, the city of Philadelphia and registered to vote. The members of the board shall elect a chair and such other officers as deemed necessary.

(2) conduct its enforcement activities either by bringing enforcement actions in the court of common pleas or, if authorized by council by ordinance; (3) administratively adjudicate alleged violations; and (4) impose civil penalties and other remedies for violations. Finally, Section 20-606 of the Philadelphia Code sets forth detailed powers and duties of the board.[4] Section 20-606(i) mandates that

---

4. Section 20-606 of the Philadelphia code provides, in pertinent part, as follows:

(1) Powers and duties.

(a) Rules and regulations. The board shall promulgate rules and regulations as are necessary to implement and interpret the provisions of this chapter consistent with the goal of providing clear guidance regarding [*14] standards of conduct and ethics.

....

(f) Complaints.

(i) The board shall receive written complaints alleging violations of this chapter. All such complaints must be signed by the complainant and the board shall preserve the confidentiality of the complainant and keep information, records and proceedings relating to an investigation confidential at all times.

(ii) Whenever a written complaint is received by the board, it shall:

(.1) Dismiss the complaint if it determines that no further action is required by the board;

(.2) Investigate internally;

(.3) Make an initial determination as to whether there is probable cause to believe that a city officer or employee has violated a provision of this chapter and, if so, proceed to adjudicate the matter in accordance with the regulations promulgated under paragraph (g) of this section; or

(.4) Refer the alleged violation of this chapter to the head of the city agency in which the city officer or employee serves if the board deems the violation to be minor or if related disciplinary charges are pending against the city officer or employee; or

(.5) Refer the alleged violation to the inspector general or other appropriate enforcement authorities.

(g) [*15] Investigations and referrals.

(i) The board shall have the power to conduct an investigation of any matter related to the board's responsibilities under this chapter.

(ii) Whenever a city agency receives a complaint alleging a violation of the provisions of this chapter or determines that a violation of this chapter may have occurred, it shall refer such matter to the board. Such referral shall be reviewed and acted upon by the board in the same manner as a complaint received by the board under paragraph (e) (sic) of this section.

"the records, reports, memoranda and files of the board shall be confidential and shall not be subject to public inspection, except as otherwise provided by law." It also requires that "no person shall disclose or acknowledge to any other person any information relating to a complaint, investigation, referral or pending adjudication, except as otherwise provided by law."

Herein, McCaffery claims that Creamer and the Board are not entitled to immunity for actions beyond properly filing litigation or properly conducted administrative hearings. McCaffery specifically contends that Creamer and the board publicized and publicly disclosed their filing against him in specific violation of section 20-606(i) of the Philadelphia Code. McCaffery's complaint raises factual issues regarding whether Creamer and the Board acted outside the normal course and scope of their rights and obligations. These matters cannot be summarily resolved by summary judgment before discovery has been completed.

Creamer and the board say in their motion, without

---

(h) Adjudication. The board shall, by regulation, provide for adjudication of alleged violations of this chapter, insuring that notice and an opportunity to be heard are provided prior to any final decision by the board. If the board finds that there has been a violation of this chapter it may impose penalties pursuant to section 20-612. Findings and decisions of the board on any actions taken by the board shall be final and there shall be no further appeal other than to court as provided by law.

(i) Confidentiality. Except as otherwise provided in this chapter, the records, reports, memoranda and files of the board shall be confidential and shall not be subject [*16] to public inspection, except as otherwise provided by law. Also, no person shall disclose or acknowledge to any other person any information relating to a complaint, investigation, referral or pending adjudication, except as otherwise provided by law.

presenting any of "of record" evidence,[5] that all public disclosures McCaffery alleges defamed him were exclusively enforcement updates read into the record at an official meeting of the board. However, defendants admit they issued a press release before the public meeting "for immediate release," on May 12, 2009 in contravention of section 20-606 of the Philadelphia Code. In this press release, issued days before the primary election, defendants proclaimed that McCaffery had "deliberately violated" the campaign finance law and specifically that a $10,500.00 had contribution been misreported. The press release characterized the behavior as "....a scheme to hide the excess contribution from the public." Issued one day prior to the public board meeting it quotes Ethics Board chair Richard Glazer as saying:

> "If political donors and the candidates they support were allowed to agree to misreport the actual amount of a contribution check by artificially 'allocating' portions of a single contribution check into different calendar years, then both the city's contribution limits and the entire campaign finance disclosure system would be rendered meaningless,"[6]

---

5. Although minutes are attached as exhibits there is no affidavit or attestation verifying their accuracy. Nonetheless, because factual issues clearly exist, this opinion will assume without attestation, verification, or other proof the accuracy of all exhibits attached to motion and answer.

6. In the minutes of the Philadelphia board of ethics meeting of September 16, 2009, defendant Creamer is quoted as saying:

"that the excess contribution issue has been resolved because the parties had determined that no funds were received in 2008 that would have created an excess contribution."

At the October 21, 2009 meeting of the Philadelphia board of ethics defendant Creamer also admitted:

"That the McCaffery campaign did not actually receive the good government fund check until January 27, 2009.

The minutes of the public board meeting reflect ethics board chair Richard Glazer saying these exact words a day later in public session.

Whether these accusations of intentional unethical behavior were communicated to the press by press release prior to the public official meeting, or revealed in private disclosures, or were made at a press conference, or were improperly disclosed through other discussions with the public news media either before or after that official board meeting, or whether that same information was only obtained by press attendance at an official public Board meeting are questions of fact upon which this case may turn. This question of fact can only be resolved through factual examination, and certainly cannot be summarily determined before discovery.

Likewise, if McCaffery can demonstrate that mandatory procedural steps required prior to any court action were not followed or if the confidentiality provisions under which the board of ethics was required to act had not been followed and if the allegations publicly made just prior to the district attorney primary were in fact unsubstantiated and revealed as part of an intentional design to hurt his candidacy, then the elements of actionable defamation have been made out.

Once the defendants ultra vires offer extra judicial commentary without authority, they violated their own enabling statute and law and are no longer protected by

Therefore, because contributions are made when received under Pennsylvania law, the contribution did not count toward the 2008 contribution limit and the amount of PAC contribution the McCaffery campaign accepted in 2008 complied with the limited imposed by the city campaign finance law."

quasi judicial immunity. While the allegations contained in the properly filed common pleas complaint are protected from defendant's claims, the Pennsylvania Supreme Court has held that publicizing that same information beyond the actual filing is not protected. In *Bochetto v. Gibson,* 580 Pa. 245, 860 A.2d 67 (2004) an attorney who had properly filed a complaint with the court of common pleas faxed that complaint to a freelance reporter for the legal intelligencer who published an article detailing the allegations of the complaint. The Supreme Court held that the judicial privilege protects an attorney from liability for the allegations contained in the filed complaint. However, seeking and obtaining press coverage for that same information by the mere act of faxing that same complaint as filed to a reporter is actionable. That activity was actionable even though that same complaint could have been independently retrieved as a public record by the reporter. In *Bochetto* the trial court had granted summary judgment. Reversing that decision, the Supreme Court held the judicial privilege afforded absolute immunity only for communications issued in the regular course of judicial proceedings. Immunity extended to the parties and attorneys, does not cover republication. In *Post v. Mendel,* 510 Pa. 213,507 A.2d 351, (1986) the Supreme Court explicitly held said that the judicial privilege "is not a license for extra judicial defamation...." The court held that judicial privilege does not preclude liability for:

"Statements he made in the letter detailing alleged acts of misconduct by his opposing attorney sent as copies to the judge trying this case, the disciplinary board and the accused attorney's client. Although that accusatory

letter had been issued during the course of trial and referred to matters that occurred during the trial it was not protected because it was not issued 'as a manner of regular course of proceedings'. Neither was it pertinent and material to the proceedings."

In *Bochetto* the Supreme Court reaffirmed that publication of the complaint by a proper filing was clearly protected by privilege:

"However, the fact that the privilege protects this first publication does not necessarily mean that it also protects Gibson's later act of republishing the complaint...."

"Even an absolute privilege may be lost through over publication...in the case of the judicial privilege over publication may be found where a statement initially privileged because made in the regular course of judicial proceedings is later republished to another audience outside of the proceedings."

The mere fact of sending the filed copy of the complaint to the *Legal Intelligencer* without comment is actionable in Pennsylvania. Likewise a defamatory press release or commentary before or after an official meeting of the board of ethics at which the filing of a complaint and the content were described publicly is not protected by the judicial privilege.[7]

The rules for summary judgment, Pa. R. Civ. Pro. 1035-1035.4, specifically provide that a party may not rest

---

7. This court does not have to decide whether the dissemination of the contents of the complaint through the medium of a public board meeting is or is not protected until such time as discovery reveals the true extent and mode of dissemination.

upon the mere allegations of the pleading. These rules also specifically provide for additional discovery:

> "any party may move for summary judgment... whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery."

The moving party's right to summary judgment has to be "clear and free from doubt after examination of the record in a light most favorable to the non-moving party and resolution of all doubts as to the existence of a genuine issue of material fact against the moving party."[8] The non-moving party opposing summary judgment has a burden to "adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor."[9]

Pa. R. Civ. R. No. 1035.3 further provides:

> "(b) an adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and action proposed to be taken by the party to present such evidence."[10]

Without doubt, plaintiff herein has the right to conduct discovery to demonstrate that the intentional and malicious defamation allegations can be supported.

---

8. *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 657 (Pa. 2009).

9. *Ertel v. Patriot-News Co.*, 674 A.2d 1038, 1042 (Pa. 1996).

10. If supplemention is made even in violation of prior court orders, the supplemental factual material must be considered. *Gerrow v. John Royle & Sons*, 813 A.2d 778 (Pa. 2002).

Clearly, plaintiffs have the right to present the results of that discovery in their response to a summary judgment motion to demonstrate that real factual issues exist. This summary judgment motion having been filed, even though no depositions have occurred, must be denied.

Defendants rely herein, as they did in their preliminary objections, upon the complaint's words: "press conference." They claim that since no "press conference" occurred, summary judgment must be granted.[11] Defendants exclusively rely on plaintiff's answer, to defendants' Interrogatories. In those Interrogatories defendant said:

> "In response to interrogatory number 1: 'During the May 2009 board meeting of the defendants an invitation was extended to local media outlets to attend thereby converting said board meeting to a de facto press conference....to circumvent Philadelphia code 20-606(i) which clearly states inter alia that no person shall disclose or acknowledge to any other person any information relating to a complaint investigation referral or pending adjudication'."

In that same answer to interrogatory number 1 plaintiff states:

> "After a one sided recitation of facts was read to the assembled mass of press corp. reporters, defendant Creamer answered questions from the assembled reporters whereby he accused McCaffery of knowingly

---

11. Defendants present no affidavits, sworn statement or even any discovery in support of their motion. The records and minutes attached are not attested to in any way and the motion itself has no verification.

conspiring to intentionally violate the law on the eve of the election for Philadelphia District Attorney."

In those same Interrogatory answers plaintiff identified the Philadelphia Daily News, Philadelphia Inquirer, Philadelphia.com, and multiple political websites across the commonwealth as some of the places to which the defamatory information promulgated.[12]

In their interrogatory answers plaintiff, also specifically reserved their right to supplement their answers to interrogatories since as discovery had not been completed.

Plaintiffs in their answer to the summary judgment motion, attached a press release issued by defendants.[13] Plaintiffs claim this press release, which made defamatory allegations and summoned the press to an ethics board meeting on the eve of the election, was itself improper and actionable because the city charter required all such allegations be kept confidential.[14] Plaintiff further contends that this press release was neither incidental to defendants' proper duties as government officials, nor accidental. Plaintiff claims defendants did not negligently overlook their explicit confidentiality requirements. Rather plaintiff asserts that issuing that press release prior to the public

---

12. In interrogatory number 8 plaintiff states:
"...that Creamer threatened to both convene a press conference to let the media know that McCaffery had refused to comply with a validly issued subpoena and ongoing criminal investigation of the Philadelphia board of ethics."
13. Exhibit C to plaintiffs answer to defendants motion for summary judgment.
14. Footnote regulation number 5 cited by defendant as justification for their behavior has no import whatsoever since it did not become effective until November 2, 2009, seven months after the defendant publicized their claims against McCaffery.

meeting was intentionally calculated and maliciously designed to harm the plaintiff's district attorney candidacy by specifically damaging his reputation. While these claims have yet to be proven, summary judgment may not be granted when the sworn testimony of those involved has not yet been taken.

Defendants' reliance on the words "press conference" in plaintiff's complaint to support their summary judgment motion seeking dismissal "with prejudice is misplaced." Technical pleading requirements contravene longstanding Pennsylvania jurisprudential philosophy

Rule 126 of the Pennsylvania rules of civil procedure reads:

> "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties."[15]

This rule, both by its clear language and by longstanding consistent application, affirms the essential policy of the justice system of Pennsylvania that cases be decided substantively on the merits and that substantive justice should not be thwarted by non-essential procedural missteps.

Rule 126 has been interpreted to permit amendment of a complaint in a wide variety of situations. The Supreme

---

15. Of course application of rule 126 is not required to deny this motion since factual issues exist.

Court has held that summary procedural dismissal is such a drastic sanction that "the right to amend should not be withheld where there is some reasonable possibility that [the] amendment can be accomplished successfully."[16] The Pennsylvania Superior Court has held that "even when a complaint is deficient, amendment and not dismissal, is the appropriate remedy."[17] A complaint which improperly designated the nature or type of action brought can be amended.[18]

Whether issuing a press release, or summoning the media to an official meeting by an intentionally inaccurate and provocative press release claiming significant personal and campaign improprieties days before the primary election can properly be characterized as a "press conference" or whether informal meetings, or conversations with the media by defendant Creamer or other members of the board of ethics, occurred prior to any official meeting, or subsequent to the close of any official meeting, cannot be determined until discovery is completed. In the event that upon the completion of discovery it turns out that improper dissemination of defamatory statements should more properly be characterized as "meetings with the press" or "discussions with the press" or "conferences held with specific reporters" or "telephone conversations with the media" or the improper release of information by any method, then an amended complaint may be filed.

Pennsylvania rule of civil procedure 1033 specifically

16. *Otto v. American Mut. Ins. Co.,* 482 Pa. 202, 393 A.2d 450 (1978), vacating 241 Super Ct. 423 Pa. R.C.P. 1033.
17. *Harkins v. Zamichielli,* 266 Pa. Super. 401, 405 A.2d 495, 499 (1979).
18. *Hoza v. Hoza,* 302 Pa. Super. 72, 448 A.2d 100 (1982).

authorizes the filing of an amended complaint at any time. Case law permits the filing of an amended complaint even after trial to conform to the evidence.[19] In the event plaintiffs determines that an amended complaint should be filed after discovery is completed an amended complaint may be filed at that time.

However, whether or not any amended complaint is eventually filed, it is beyond any possible claim that defendants have not been properly put on notice that the gravamen of the activity which makes defamatory conduct actionable, and beyond all limited immunity protections afforded to an adjudicatory body, is the improper, intentional, and malicious, dissemination of defamatory allegations against a candidate on the eve of election in violation of defendants own enabling statutes.[20]

For the reasons set forth above the motion for summary judgment is denied.

## ORDER

And now, April 4, 2012, upon consideration of the motion of defendants J. Shane Creamer, Jr. and City of Philadelphia board of ethics for summary judgment, and plaintiff's answer in opposition thereto, it is hereby ordered and decreed that the said motion is denied.

---

19. *Sheppard v. First Pennsylvania Banking and Trust Co.,* 199 Pa. Super. 190, 184 A.2d 309 (1962), *Biglan v. Biglan,* 479 A.2d 1021 (Pa. Sup. 1984).

20. The court notes that the enabling legislation claimed to be violated were specifically designed and written to end improper electoral interference and influence. If the allegations of the complaint are proven at trial there can be no question that defendants acted under color of state law beyond their proper purview for insidious purposes directly contrary to the principles for which the "ethics board" was created. All of these allegations have yet to be proven. Plaintiff has the right to conduct discovery to determine what can be factually demonstrated.